ELLIUS A. EMERSON, administrator, *vs.* METROPOLITAN LIFE
INSURANCE COMPANY.

Essex.    November 5, 1903. — March 31, 1904.

Present: KNOWLTON, C. J., MORTON, BARKER, LORING, & BRALEY, JJ.

*Insurance, Life.    Practice, Civil.*

A life insurance policy, issued after April 11, 1894, was made payable to the wife
of the insured, if living, otherwise to the legal representatives of the insured,
upon the receipt by the insurance company and its approval of proofs of death
of the insured. The wife of the insured survived him and submitted proofs of
death, but died two days later. The proofs of death had not been acted on by
the company, which furnished an additional blank to be filled out by the attend-
ing physician of the insured. The administrator of the widow procured and
delivered the required certificate, and sued on the policy. *Held,* that the right
of action had vested in the widow and passed to her administrator.

A condition in a life insurance policy required the insured to have been in sound
health at the time the policy was issued. There was evidence that at the time
the policy was issued the insured was subject to epileptic fits and that he died
of epilepsy. There also was evidence in contradiction of this. In an action on
the policy, the jury found that the insured was in sound health when the policy
was issued, and that he did not have epileptic fits before that time. The defend-
ant excepted to a refusal of the presiding judge to rule that, if at the date of the
policy the insured was subject to fits or bad spells or loss of consciousness, he
was not in sound health at that time. *Held,* that the finding of the jury made
this request immaterial and the defendant was not harmed by the refusal.
*Whether* it could have been ruled as matter of law, that the insured was not in
sound health if subject to fits or bad spells or loss of consciousness, *quære*.

MORTON, J.    This is an action upon a policy of insurance
issued by the defendant company upon the life of one John C.
Varney.    The policy is dated June 13, 1898, and is for $2,000.
It is made payable " to Mary H. Varney wife of the insured . . .
if living, otherwise to the legal representatives of the insured,
upon the receipt by the company at its home office and its ap-
proval of the proofs of death of the insured, made in the manner,
to the extent and upon the blanks required by condition Six, and
upon the surrender of this policy."    John C. Varney died Sep-
tember 30, 1899.    Proofs of death furnished by the defendant
were filed with it by Mary H. Varney on or before October 12,
1899.    Mary H. Varney died October 14, 1899, and the plaintiff
is administrator of her estate.    The proofs of death furnished by

her were not acted on by the defendant, but an additional blank was furnished by it to be filled out by the physician who had attended Varney in 1871, 1883, and 1885. The administrator completed this additional blank November 7 and filed it with the defendant November 8, 1899. The date of the writ was January 21, 1901.

There was a verdict for the plaintiff and the case is here on exceptions by the defendant to the refusal of the judge to give certain rulings that were requested.

The first question is whether the action can be maintained by the plaintiff as administrator of the estate of the wife. We think that it can. The applications are not before us and it may be doubtful whether the contract contained in the policy is not a contract between the defendant and the wife. See *Millard* v. *Brayton*, 177 Mass. 533. But, however that may be, it is expressly provided by R. L. c. 118, § 73, that "the person to whom a policy of life insurance, issued subsequent to the eleventh day of April in the year eighteen hundred and ninety-four, is made payable may maintain an action thereon in his own name." The policy in this case was issued after April 11, 1894, and comes therefore within the statute. No good reason can be assigned why the right of action thus given should not survive and pass to the administrator when it has once vested, or why the right should be regarded as a purely personal privilege bestowed on the person to whom the policy is made payable. As we construe the policy, the defendant agreed to pay the wife, if living at the death of the husband, $2,000 at its office in New York upon receipt and approval by the company of proofs of the death of the husband made in the manner and to the extent and upon the blanks required and upon surrender of the policy. The beneficiary could not of course be required to surrender the policy except upon payment, and so far as appears the defendant has refused to pay at New York or anywhere. The wife survived the husband and proofs of death on blanks furnished by the defendant were filed with the defendant by the wife before her death. It is true that these blanks were not acted upon by the company, and an additional blank was sent which was not completed and returned till after her death by her administrator. But the right of the wife or of her estate to the proceeds of the

policy depended primarily on her surviving her husband. It might be defeated by failure on her part or on the part of her administrator to comply with the conditions of the policy, but subject to that contingency the right to the proceeds of the policy vested in her at the death of her husband. There is nothing to show that the proofs were not satisfactory as proofs of death, and we think as already observed that the action can be maintained by her administrator.

The application was made a part of the policy and the answers and statements were declared to be warranties. One of the conditions on which the policy was issued was that the insured was at the time in sound health. The defendant contended that the insured was an epileptic at the time of the application, and that the answers to certain material questions were false and on all the evidence requested the judge to direct a verdict for the defendant and to instruct the jury that if on the thirteenth of June, 1898, the date of the policy, the health of the insured was such that he was liable to have fits, or bad spells, or loss of consciousness he was not in sound health at that time. The judge declined to rule as thus requested, except so far as covered by the charge, and submitted the case to the jury with the question "Did John C. Varney, the person insured, have epileptic fits prior to the date of his application for insurance, June 9, 1898?" The jury answered "No."

There was much evidence tending to show that the insured was subject to epileptic fits at the time when the policy was issued and that he died of epilepsy. But there was also evidence of a contrary character. It would serve no useful purpose to attempt to review the testimony in detail. The question was eminently one of fact for the jury and was submitted to them with full instructions. They were specially instructed, amongst other things, that the policy did not attach unless at the date of delivery the insured was in sound health and that the plaintiff could not recover unless he satisfied them by a fair preponderance of the evidence that the insured was in sound health on that day. This was in substance repeated. We doubt whether it could have been ruled as matter of law that the insured was not in sound health if liable to have fits or bad spells or loss of consciousness. But if it should have been so ruled the defendant

was not harmed by the refusal to instruct as requested because the jury found that the insured was not subject to epileptic fits prior to the date of the application and consequently that he was not liable to have fits, or bad spells or loss of consciousness.

The result is that we think that the exceptions should be overruled.

*So ordered.*

*G. W. Cox,* for the defendant.
*J. H. Pearl,* for the plaintiff.