ELIZABETH A. BARKER *vs.* METROPOLITAN LIFE INSURANCE
COMPANY.

Middlesex.   March 3, 1908. — April 6, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Insurance*, Life, Proof of death, Fraud or misrepresentations of insured.   *Evidence*,
Presumptions and burden of proof.

At the trial of an action against an insurance company by the beneficiary under a
policy issued " in consideration of the answers and statements contained in the
application . . . all of which . . . are made warranties," and containing the stipu-
lation, "No obligation is assumed by the company . . . unless upon this date the
insured . . . is in sound health," it appeared that in the application the insured
stated that he never had had any disease of the kidneys and that he was in sound
health, that the policy was issued July 19, that the insured was taken ill on
August 9 and an operation was performed on August 24, at which it was discov-
ered that he had cystic disease of the kidneys from which he died.   There was
evidence tending to show that the insured was strong and in sound health when
the policy was issued and continued about his daily work, which required ac-
tivity and much lifting, up to the time of his illness on August 9, and a physician,
qualified as an expert, testified in his opinion the insured might not have
had cystic disease of the kidneys at the time when the policy was issued.   The
defendant introduced evidence to the effect that the insured did have a disease
of the kidneys when he was insured, and requested that a verdict be directed in
its favor.   The presiding judge refused the request, and charged the jury that,
if the insured was not in sound health, or if he had a disease of the kidneys when
he was insured, the plaintiff could not recover.   The jury found for the plaintiff.
*Held*, that the refusal to direct a verdict was right, since there was evidence upon
which the jury were warranted in finding for the plaintiff.

A policy of insurance contained the stipulation, " No obligation is assumed by the
company . . . unless upon this date the insured . . . is in sound health," and
also contained a condition that "Proofs of deaths shall be made . . . in the man-
ner and to the extent required by blanks furnished by the company, and shall con-
tain answers to each question propounded to the claimant, physicians and other
persons indicated in the blanks. . . . The proof of death shall be evidence of the,
facts therein stated in behalf of, but not against the company."   In his applica-
tion, the insured stated that he was in sound health and never had had any dis-
ease of the kidneys.   He died less than two months after the policy was issued
of cystic disease of the kidneys.   The beneficiary under the policy filed a proof
of claim containing a statement of an attending physician that the insured died of
"cystic disease of the kidneys of long duration."   At the trial of an action
brought by the beneficiary upon the policy, there was evidence that the insured
was of sound health when insured and did not then have a disease of the kid-
neys.   The defendant introduced in evidence the proof of death and requested
the presiding judge to rule that the plaintiff was bound by the statement of the
physician therein which " as matter of law " showed that the insured had a dis-
ease of the kidneys when he was insured, and that therefore the plaintiff could

not recover.  The request was refused.  *Held*, that the request rightly was refused, since, under the terms of the policy, the statement of the physician at most was evidence merely and not conclusive evidence; *also*, that *Campbell* v. *Charter Oak Ins. Co.* 10 Allen, 213, was distinguishable, and would not be extended.

At the trial of an action against an insurance company by the beneficiary under a policy of life insurance stated to be issued " in consideration of the answers and statements contained in the application . . . all of which . . . are made warranties," it appeared that the insured in his application had stated " No one of my parents, grandparents, brothers or sisters ever had consumption or other pulmonary disease," and therein had expressly warranted and agreed that the representations in the application " were strictly correct and wholly true."  There was some evidence that brothers of the insured, before the date of the application, had died of consumption.  The defendant requested the presiding judge to rule that the burden was upon the plaintiff to show by a fair preponderance of evidence that the statements in the application were true without exception, or that any matters misrepresented therein did not increase the loss and were not misrepresented with actual intent to deceive.  The presiding judge refused the request.  *Held*, that the request rightly was refused, since, under R. L. c. 118, § 21, if the defendant relied in defense upon an alleged misrepresentation or false warranty in the application, the burden of proof was upon it to show either that such misrepresentation or warranty was made by the insured with actual intent to deceive, or that it increased the risk of loss.

CONTRACT upon a policy of life insurance issued by the defendant upon the life of the plaintiff's husband for the plaintiff's benefit.  Writ in the Superior Court for the county of Middlesex dated March 20, 1900.

The case previously was before this court, when it was decided, as reported in 188 Mass. 542, that, if the insured was not in sound health at the time when the policy of insurance was issued, the plaintiff could not recover, but that there was evidence for the jury on that question.

There was another trial before *Aiken*, C. J.

It appeared that the policy was issued when the insured was thirty-eight years old, and was stated to be " In consideration of the answers and statements contained in the application for this policy a copy of which is hereto annexed as a part of this contract . . . all of which answers and statements are hereby made warranties," and contained the stipulation, " No obligation is assumed by the company until the first premium has been paid, nor prior to this date, nor unless upon this date the insured is alive and in sound health."

In the application for the policy, the insured expressly warranted and agreed that the representations and questions made

in the application were strictly correct and wholly true; that they "shall form the basis and become part of the contract of insurance, and that any untrue answers will render the policy null and void, and that said contract shall not be binding upon the company unless upon its date and delivery the insured be alive and in sound health." The following are the statements contained in the application which are material: "I have never had any of the following diseases: disease of kidneys; disease of urinary organs. I am now in sound health. The following is the name of the physician who last attended me, the date of attendance and the name of the complaint for which he attended me: Dr. Searles; indigestion; July 2, 1897. I have not been under the care of any physicians within two years unless as stated in previous line except for La Grippe, 1898. No one of my parents, grandparents, brothers or sisters ever had consumption, or any pulmonary or scrofulous disease."

A material condition in the policy is stated in the second paragraph of the opinion.

Several witnesses for the plaintiff testified that the insured appeared strong and in good health at the time when he was insured and that, from that time until August 9, 1899, he continued about his daily duties, which involved exposure and heavy lifting.

Dr. Cote, mentioned in the opinion, qualified as an expert and stated "that cystic degeneration of the kidneys might exist for some time and not affect the health of the person, and that there was no knowledge of its origin, that it might never affect the health of the person, and that it was not likely to develop unless stimulated by some other disease. He gave it as his opinion that the insured might not have had cystic degeneration of the kidneys when he was insured, and that it might have developed since he was insured, that nothing is known of the cause of cystic degeneration of the kidneys, and it is characterized in some cases by no symptoms and in others by the presence of tumors. The fact that a sister and brother died of consumption when they were over thirty years of age would not increase the risk on the life of a person who had attained the age of thirty-seven or thirty-eight years. Consumption is not now considered hereditary by the medical profession."

Dr. Hobbs, who examined the insured at the time when he made his application, testified that he then seemed strong and healthy, but that if the insured had then told him facts which Dr. Hoitt testified (as hereinafter stated) the insured had told him, he would have rejected his application.

Dr. Hoitt testified for the defendant that on August 14, 1899, at the request of the plaintiff's family physician, he called upon the insured, who gave him a "history of his present sickness," stating that ten years before that time he came home complaining of "pain in his urine," that four years afterwards he "had a second attack on the street," that on February 1, 1899, he was carried home unconscious, that on July 8, 1899, he "had an attack, when he was unconscious, pupils dilated, eyes rolled upward and hands clinched, but he recovered in a few days." On August 24, 1899, the witness testified, he performed an operation upon the insured for the purpose of exploring the condition of the kidneys to ascertain the exact trouble, and discovered that the insured was suffering from cystic disease of the kidneys, that it was his opinion that the condition in which he found the kidneys was one which could not develop from a perfectly normal state in less than several months, "that cystic disease of the kidneys was a serious and dangerous disease which necessarily increases the risk of a person dying, as it is incurable, and that, although it might exist for several years and a person who had it might die of some other intervening disease, yet, nevertheless, it was always likely to develop with fatal results, that the history which he obtained from the insured indicated that he suffered from cystic disease of the kidneys for several years; and that, apart from the history of previous illness, he could say from the condition in which he found the insured's kidneys in August, 1899, that the insured could not have been in sound health on the nineteenth day of July, 1899." The witness also testified that he learned from the insured that one of his brothers died at thirty-two, and his sister at thirty-six years of age, both of consumption; and another brother at forty, of Bright's disease; and he gave it as his opinion that the fact that a person's brother or sister died of consumption at the ages of thirty-six and thirty-two tends to increase the risk of loss on a person's life.

The defendant also introduced in evidence the statement of Dr. Hoitt filed by the plaintiff with the proofs of death upon blanks furnished by the defendant, in which he stated, in answer to the question, "For what disease or diseases have you at any time attended the deceased prior to last illness, and what was their duration?" "August 24, 1899, cystic disease of kidney and operation for same. In receiving history of his case, found it was of long duration." In answer to the question, "Cause of death?" he stated, "Cystic disease of kidney."

The defendant also introduced in evidence the plaintiff's own statement from her proof of claim to the effect that a brother of the insured died at the age of twenty-eight, and that the cause of his death was quick consumption; that another brother died at the age of forty, and that the cause of his death was kidney trouble.

At the close of the evidence, the defendant requested the presiding judge to rule as follows:

"1. Upon all the evidence the plaintiff cannot prevail and the defendant is entitled to a verdict in its favor.

"2. The plaintiff is bound by the statements in the proof of death unless such statements are shown to be fraudulently obtained or that the statements do not, as a matter of law, avoid the policy.

"3. There is no evidence to show that the statements of Dr. Hoitt in the proofs of death are untrue.

"4. The statements of Dr. Hoitt in the proofs of death show that the insured had a disease of the kidneys, prior to the application for the policy of such a character as to avoid the policy, as matter of law.

"5. The burden of proof is upon the plaintiff to show by a fair preponderance of the evidence that the statements in the application were true without exception, or that any matters misrepresented therein did not increase the risk of the loss and were not misrepresented with actual intent to deceive.

"6. On the evidence in this case the jury must find that statement numbered ten in the application, that is, 'No one of my parents, grandparents, brothers or sisters ever had consumption, or any pulmonary or scrofulous disease,' is untrue.

"7. Statement numbered ten in the application was material

and related to a matter which increased the risk of loss, and, if the jury find that such statement was untrue, the defendant is entitled to a verdict in its favor; and this is so whether the insured thought his statement was correct or did not think so.

"8. The plaintiff has not shown by a fair preponderance of the evidence that statement numbered ten in the application does not relate to a matter which increases the risk of loss and if the jury find it to be untrue the defendant is entitled to a verdict in its favor."

The judge refused to rule as requested but charged the jury in substance as follows: "If the insured was not in sound health on July 19, 1899, the defendant is entitled to a verdict in its favor. If on that date he had cystic disease of the kidneys, or had cystic degeneration of the kidneys, he was not in sound health on that day and the defendant is entitled to a verdict in its favor.

"The two considerations which I am now about to call your attention to need only be considered by you when you determine that Barker was in sound health. The first proposition that I have referred to the plaintiff must establish. The two propositions which I am about to speak of are upon the insurance company, the defendant in this case, to make out; and they must be made out by evidence of the same amount, namely, a fair preponderance. The first is a proposition that the contract puts upon the insured or the beneficiary under this policy to establish. The two propositions which I am about to refer to arise upon the application. [The judge then stated with elaboration the second and third propositions given below, and recapitulated as follows:]

"Now, here are three propositions, and I am going to repeat them in order that we may have the matter more clearly before us. The first proposition is this: the plaintiff must make out by a fair preponderance of the evidence that the insured, Barker, was in sound health on July 19, 1899. If there is failure to establish that, the defendant is entitled to a verdict. The right to a verdict on the part of the plaintiff on this proposition is upon the establishing of that. If Barker in your judgment was in a sound state of health at the time that the policy went into effect, July 19, then there remain two other questions. The

first of the two is, were there any misstatements made by Barker with an actual intent to deceive the company? The second is, were there any misstatements made by Barker in regard to matters which increased the risk on the part of the company? The burden of proof is upon the plaintiff as to the first of the three propositions. The burden of proof is upon the defendant as to the other two.

"After the decease of Barker a notice of his death was sent by the widow to the company, which was required by the terms of the policy. Whatever appears in that notice of death is evidence in behalf of the company. There were some statements made by Dr. Hoitt in the proof of death. But you will naturally and you will reasonably consider — Dr. Hoitt having been a witness upon the stand here — whether he has not testified to you in substance all of what he says in the proof of death. The statements of Dr. Hoitt in the proof of death are evidence in favor of the company; but you will consider whether he has stated anything more than he has testified to on the stand before you, and you will consider whether making the statement in the proof of death gives it or not any additional weight than the testimony given by him before you on the witness stand."

There was a verdict for the plaintiff and the defendant alleged exceptions.

The case was submitted on briefs.

*W. M. Butler & G. W. Cox*, for the defendant.

*J. J. Shaughnessy & F. P. O'Donnell*, for the plaintiff.

SHELDON, J. A verdict could not have been ordered for the defendant at the trial. There was evidence, and under the instructions given the jury must have found, that the insured at the date of the policy did not have cystic disease or cystic degeneration of the kidneys, but was in sound health, and that either he made no misstatements in his application, or, if so, that they were not made with actual intent to deceive and the matters so misstated did not increase the risk of loss. R. L. c. 118, § 21. St. 1907, c. 576, § 21. As the only exception saved was to the refusal of the court to give the specific instructions requested by the defendant, the verdict must stand unless some error is shown in this respect. *Barker* v. *Metropolitan Ins. Co.* 188 Mass. 542. *Emerson* v. *Metropolitan Ins. Co.* 185 Mass. 318.

But the defendant contends that the plaintiff is bound by the statement made in the proofs of death furnished by her to the company that the insured died of cystic disease of the kidneys which was found to be of long standing. The policy of insurance was dated July 19, 1899; the insured died September 4, 1899; his last sickness, or, as the defendant contended, the final attack of his last sickness, began in August of that year. The sixth condition of the policy provided as follows: "Proofs of death shall be made to the home office in the manner and to the extent required by blanks furnished by the company, and shall contain answers to each question propounded to the claimant, physicians and other persons indicated in the blanks. . . . The proofs of death shall be evidence of the facts therein stated in behalf of, but not against the company." The particular statement in question was made and sworn to by Dr. Hoitt, the insured's attending physician.

The defendant relies on the decision of this court in *Campbell* v. *Charter Oak Ins. Co.* 10 Allen, 213. But that case, although it has not been actually overruled, has been criticised, and its effect limited to the exact circumstances that were then before the court. In *Cluff* v. *Mutual Benefit Ins. Co.* 99 Mass. 317, 324, the court, in declining to apply the rule of *Campbell* v. *Charter Oak Ins. Co.*, laid some stress upon the fact that the statement there considered was not sworn to by the plaintiff, and did not purport to be made by her. The court refused again to apply the rule to its full extent in *City Five Cents Savings Bank* v. *Pennsylvania Ins. Co.* 122 Mass. 165. In *Hogan* v. *Metropolitan Ins. Co.* 164 Mass. 448, a case in which the facts were much like those which appear in the case at bar, the statement that the insured had had kidney disease at a time before the date of his application and of the issuing of the policy was made by the plaintiff herself in the proofs of loss furnished by her; and she was allowed to contradict this statement, and to show that a contrary representation in the application was true. And the present Chief Justice, after stating the defendant's contention that the plaintiff was bound by her answer in the proof of death under the rule in *Campbell* v. *Charter Oak Ins. Co.*, pointed out that that case had not been generally followed in other jurisdictions, and in this Commonwealth never had been treated as

enunciating a doctrine of universal application, nor extended to facts differing from its own. To the same effect are *Abraham* v. *Mutual Reserve Fund Association,* 183 Mass. 116, and *Noyes* v. *Eastern Accident Association,* 190 Mass. 171, 180, 181.

The essential facts before us are not like those of *Campbell* v. *Charter Oak Ins. Co.* The statement in question was not made by the plaintiff. It was made by the attending physician, not as a matter of fact, but as an opinion founded upon the history of the case, and was plainly grounded upon information given to him by others, but by whom it did not appear. His affidavit was merely to the best of his knowledge and belief. Moreover, it was stipulated in this policy that the proofs of death should be evidence in behalf of, but not against, the company; and if merely evidence, they could not be absolutely binding upon the plaintiff.

In view of our own later decisions already referred to, we are satisfied that the rule of *Campbell* v. *Charter Oak Ins. Co.* ought not to be extended to cover a case like the one now before us. It follows that the defendant's second request for instructions could not have been given.

The defendant also argues that the burden was upon the plaintiff to show either that the statements made by the insured in his application were true without exception, or else that any matters misrepresented therein did not increase the risk of loss and were not misrepresented with actual intent to deceive. These statements were expressly made warranties by the terms of the application.

It is no doubt true, as argued by the defendant, that at common law, while the burden was upon the defendant to show the materiality and the falsity of any misrepresentations upon which it relied for the avoidance of any policy or other contract, the plaintiff was bound to prove the truth of or compliance with all express warranties, whether positive or negative. *Campbell* v. *New England Ins. Co.* 98 Mass. 381, 389. *McLoon* v. *Commercial Ins. Co.* 100 Mass. 472. *Clapp* v. *Massachusetts Benefit Association,* 146 Mass. 519. *Cobb* v. *Covenant Benefit Association,* 153 Mass. 176. *Fuller* v. *New York Ins. Co.* 184 Mass. 12. But it has been decided by this court that the statute above cited was only declaratory of the common law as to representations,

but that it changed the rule as to warranties by putting them into the same category as mere representations.    *White* v. *Provident Savings Assurance Society*, 163 Mass. 108, 115.    The fact that the language of the statute there referred to (St. 1887, c. 214, § 21) has since been changed so as expressly to include warranties, adds force to the reasoning of the court in that decision.    And see *Levie* v. *Metropolitan Ins. Co.* 163 Mass. 117; *Ferguson* v. *Union Ins. Co.* 187 Mass. 8; *Kidder* v. *United Order of the Golden Cross*, 192 Mass. 326; *Paquette* v. *Prudential Ins. Co.* 193 Mass. 215.    In *Nugent* v. *Greenfield Life Association*, 172 Mass. 278, the insured warranted the truth of his answers; and yet, because the defendant had not annexed a correct copy of his application to the policy, as required by St. 1890, c. 421, § 21, it was not allowed to prove that the answers were false, — a decision which could not have been made if the distinction now contended for by the defendant had been well founded.    So in *Dolan* v. *Mutual Reserve Fund Association*, 182 Mass. 413, it was said to be immaterial whether a misstatement in the application was a warranty.    The statute puts both misrepresentations and warranties into the same class; and the same rule as to the burden of proof should be applied to each of them.    The statute does not purport to apply to a warranty in the body of the policy; and as to such a warranty the common law rule remains in force, as was held in this very case in 188 Mass. 542.

We need not consider whether or how far this rule will be affected by the provisions of St. 1907, c. 576, § 75, cl. 3.

It follows that the defendant's fifth request stated and its eighth request assumed an incorrect rule of law; and so both of them were properly refused.

Nor should either of the other requests, so far as refused, have been given.    There was evidence for the jury on all the matters referred to in them.    Considering the testimony of Doctor Cote and the fact, which now must be taken to be established, that the insured was in sound health when the policy was dated and delivered, it cannot be said as a matter of law that any misrepresentation by the insured as to the cause of his brother's death increased the risk of loss.    Giving to the statements in the proofs of death full force as evidence for the defendant, yet it was for the jury to say whether the representations relied on

by the defendant were false, whether they were made with actual intent to deceive, and whether the matters misrepresented or warranted increased the risk of loss. The case was submitted to the jury with proper instructions. *Flynn* v. *Massachusetts Benefit Association,* 152 Mass. 288. *Ring* v. *Phœnix Assur. Co.* 145 Mass. 426.

*Exceptions overruled.*