### ARGUED AND DETERMINED

###### IN THE

# SUPREME JUDICIAL COURT

###### OF

# MASSACHUSETTS.

---

LOUIS MONJEAU *vs.* METROPOLITAN LIFE INSURANCE
COMPANY.

LOUIS MONJEAU, administrator, *vs.* SAME.

Bristol.    October 24, 1910. — February 27, 1911.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Insurance*, Life.    *Evidence*, Presumptions and burden of proof, Opinion.    *Practice,
Civil*, Exceptions.

At the trial of an action on a policy of life insurance, the plaintiff introduced evi-
dence that the policy sued on was lost or destroyed and testimony in regard to
statements of the insured and other oral testimony as to the contract of insurance
contained in the lost policy, and the defendant introduced an instrument purport-
ing to be an original application for the insurance, which the plaintiff denied
was such, and an instrument which the defendant's witnesses testified was a
true copy of the policy, which referred to an application and had annexed to it
a copy of the application put in evidence by the defendant, but the plaintiff de-
nied that the instrument introduced by the defendant was a true copy of the
policy, and asserted that the original policy had no copy of an application
attached to it.    The judge refused to make certain rulings requested by the
defendant based on statements contained in the application which the defendant's
witnesses testified was attached to the policy.    *Held*, that, as the question whether
the application was attached to the policy was for the jury, the judge properly
might refuse to make any ruling which assumed as a fact that the application
was so attached.

If, at the trial of an action upon a policy of life insurance, it appears that the mother
of the insured died of consumption and that the insured previously had applied
unsuccessfully to another company for life insurance, and these facts are con-
trary to statements made by the insured in his application for the insurance,
which is attached to the policy, the questions, whether either of these misrep-

resentations was made with intent to deceive, or whether the risk of loss was increased by the fact that the mother of the insured died of consumption or by the fact that the insured made a previous unsuccessful application for life insurance to another company, are for the jury.

At the trial of an action on a policy of life insurance, where the defendant contends that the policy is void because the insured made misrepresentations in the application, a copy of which is attached to the policy, it is right for the presiding judge to refuse to rule that "the burden is on the plaintiff to show affirmatively that all the statements in the application material to the risk were true," because this does not state correctly the rule of law now in force in this Commonwealth under our statutes.

At the trial of an action on a policy of life insurance, where the plaintiff has introduced evidence that the policy sued on was lost or destroyed and testimony in regard to statements of the insured and other oral testimony as to the contract of insurance contained in the lost policy, and the defendant has introduced an instrument which its witnesses testify is a true copy of the policy, but this is denied by the plaintiff, and where the defendant does not put in evidence any proofs of death and there is no agreement as to the kind of proof of death required by the lost policy, and there is evidence that the defendant was satisfied with the proofs of death sent to it, whatever they were, it is right for the presiding judge to refuse to rule as matter of law that the proofs of death were insufficient.

At the trial of an action to recover the amount of certain life insurance and also to recover certain premiums for such insurance paid in advance, which never became payable because the insured died before the dates when they were to become due, the declaration contained four counts, two upon the policy and two for the premiums prematurely paid. The plaintiff introduced evidence that the policy sued on was lost or destroyed and testimony in regard to statements of the insured and other oral evidence as to the contract of insurance contained in the lost policy. The defendant introduced an instrument which its witnesses testified was a true copy of the policy, but this was denied by the plaintiff. The defendant asked the presiding judge to rule that, "if the contract between the insured and the defendant was a policy like the one put in evidence by the defendant then the plaintiff is not entitled to recover." The judge refused to make this ruling. *Held*, that the judge was justified in considering the ruling requested as intended to apply to the whole declaration, that being its natural interpretation, and so interpreted it clearly could not have been given in regard to the counts for the premiums prematurely paid, so that the refusal of the judge was right, whether or not the plaintiff had complied with the terms set forth in the copy of a policy which had been put in evidence by the defendant.

At the trial of an action on a policy of life insurance, the plaintiff introduced evidence that the policy sued on was lost or destroyed and testimony in regard to statements of the insured and other oral testimony as to the contract of insurance contained in the lost policy, and the defendant introduced an instrument purporting to be an original application for the insurance, which the plaintiff denied was such, and an instrument which the defendant's witnesses testified was a true copy of the policy, which referred to an application attached to it, but the plaintiff denied that the instrument introduced by the defendant was a true copy of the policy, and asserted that the original policy had no copy of an application attached to it. Unless the copies introduced by the defendant were true ones, there was ample evidence that the proofs of death either were satisfactory to the defendant or had been waived. The presiding judge refused to rule that the plaintiff was not entitled to recover. *Held*, that the refusal of the judge was right,

because the questions, what were the terms of the contract and whether they had been performed by the plaintiff or waived by the defendant, were for the jury.

Testimony, that a physician told the father of a certain girl that he thought that she had the consumption at a time when an insurance policy was taken out upon her life for the benefit of her father, is no evidence that she had the consumption at that time, and only tends to show that if she had that disease the father had been informed of the fact. In the present case the jury found that the insured did not have the consumption, so that the question whether the father thought that she had or represented that she had was rendered immaterial.

TWO ACTIONS OF CONTRACT, the first action upon two policies of insurance for $500 each upon the life of Olesime Comeau, the plaintiff being the assignee of the father of Olesime, Maximen Comeau, who was named as beneficiary in both of the policies, and the second action by the administrator of the estate of Olesime Comeau for the amount of the policies and also for the amount of two premiums paid in advance to the defendant upon the policies. Writs dated November 23, 1905, and December 31, 1906.

In the Superior Court the cases were tried together before *Hitchcock,* J. Such of the facts as are necessary to an understanding of the points of law involved are stated in the opinion.

At the close of the evidence the defendant asked for fourteen rulings. The last six were given as instructions by the judge or were waived or no exception was taken to the refusal to give them. The other rulings thus requested were as follows:

"1. On the whole evidence the plaintiff is not entitled to recover.

"2. If the mother of the plaintiff [*sic*] died of consumption the plaintiff is not entitled to recover.

"3. If Olesime Comeau had applied to the John Hancock Insurance Company for insurance prior to the application to this company, and no policy was issued on said application then the plaintiff is not entitled to recover.

"4. If the real party interested in this claim is Louis Monjeau, and he is not related to or a creditor of Olesime Comeau, but he procured this insurance to be taken on her in the hope of making money out of it, then the contract is against public policy and the plaintiff cannot recover. [Not argued and treated as waived.]

"5. The burden is on the plaintiff to show affirmatively that all statements in the application material to the risk were true.

" 6. The burden is on the plaintiff to show affirmatively that all conditions in the policy material to the risk and to be performed by the insured or her representatives have been performed. [Given in substance.]

" 7. The proofs of death are insufficient.

" 8. If the contract between the insured and the defendant was a policy like the one put in evidence by the defendant then the plaintiff is not entitled to recover."

The judge refused to make any of these rulings, although he was held by this court to have given the sixth in substance, and submitted the case to the jury with instructions, of which a portion is quoted in the opinion. The parties agreed that a verdict should be taken only in the second case, which was brought by the plaintiff as administrator. The jury returned a verdict for the plaintiff in the sum of $1,256.66 ; and the defendant alleged exceptions. Those relating to the admissibility of evidence are described sufficiently in the opinion.

*J. M. Morton, Jr.*, for the defendant.

*C. R. Cummings, (J. Little* with him,) for the plaintiff.

HAMMOND, J. Originally there were two actions, both brought by the same plaintiff, the first as he was assignee of Maximen Comeau the beneficiary, and the second as he was administrator of the estate of Olesime Comeau, the person whose life was insured. By the consent of the parties the actions were consolidated, and the trial proceeded as if only the second case remained, and in that case alone was the verdict rendered. The declaration contained four counts of which the first and second were each upon a policy of insurance, and the third and fourth were to recover premiums prematurely paid which by reason of the death of Olesime never became due.

At the trial the plaintiff alleged and offered evidence tending to show that both policies were lost. He was therefore allowed to put in secondary evidence of their contents. He did not put in any policy nor any alleged copy, but relied almost entirely upon oral evidence as to their provisions. This evidence was very meagre and manifestly very incomplete, and on the whole the case of the plaintiff at the time he rested presented a very skeletonlike appearance. The defendant however, so far as disclosed by the record, seemingly confident of the merits of its

defense, without calling for a ruling of the court upon the sufficiency of the plaintiff's evidence, proceeded to put in its own evidence. Among other things it put in the original application (which was for an insurance of $1,000 upon which the two policies of $500 each were issued) and also certain papers sworn by witnesses called by the defendant to be true copies of the policies. The evidence that these were true copies came wholly from the defendant. The plaintiff never conceded that they were true, nor that the application was annexed to the policies or either of them, but contended to the contrary. The case of the plaintiff as it stood when he first rested was in some respects strengthened by evidence coming from witnesses called by the defendant, especially on cross-examination, and by witnesses called by him in rebuttal. At the close of the whole evidence certain requests for rulings were presented by the defendant of which eight were refused; and the case is before us upon the defendant's exceptions to this refusal and to certain rulings as to evidence. No exceptions were taken to the charge.

We have thus outlined the general course of the trial because it must be borne in mind in dealing with the exceptions. The course of the plaintiff was somewhat unusual. While he contended that he was entitled to recover even if the papers introduced by the defendant as copies of the policies were correct, still that was not the only ground upon which he based his right to recover. All through the trial he contended that the alleged copies were not true copies, and that therefore the radical question, what were the terms of the contracts, was for the jury, as well as the question whether the terms, as the jury finally should find them to be, had been complied with by the plaintiff or waived by the defendant. This position of the plaintiff is clearly set forth in the charge. The presiding judge, after saying in substance that the first question to be determined was " What was the agreement between the parties," and that it was incumbent upon the plaintiff to prove what the policies contained, by producing them if in existence and by secondary evidence if they were lost or destroyed, proceeded as follows: " The plaintiff in this case comes in and claims that the policies have been issued and that they have been destroyed or lost, and

he offers evidence consisting in part of statements made by the deceased girl, which statements are competent evidence under the statutes of this Commonwealth, to the effect that she had policies of insurance in this company, and other evidence from which he claims that he has laid before you sufficient evidence from which you can find what the nature of those policies was, the amount, and to whom payable, and invokes the general propositions of law applicable to insurance policies. Then from the other evidence which has been in the case he asks you to believe what the policies were. There has been evidence introduced on behalf of the defendant tending to show what the policies were, and there has been put in evidence here what the defendant presents as a copy of one of the policies. That is evidence before you for your consideration and is evidence to be taken into consideration in determining whether the plaintiff has proven what the contract was between these parties." And the same position is maintained in the plaintiff's brief and was stated in the oral argument before us.

The plaintiff further contended and asked the judge to rule that the burden of proving that a correct copy of the application was annexed to the policy was upon the defendant, and further, that "if the jury find that a correct copy of the application was not annexed to the policy," then that part of the defense which is "based on the insured's alleged fraud or misrepresentation [must] fail." It does not appear that the presiding judge made any such ruling, but the request shows the position of the plaintiff upon this point.

The second and third requests of the defendant were properly refused. R. L. c. 118, § 73, provides that "every policy which contains a reference to the application of the insured, either as a part of the policy or as having any bearing thereon, must have attached thereto a correct copy of the application, and unless so attached the same shall not be considered a part of the policy or received in evidence." The copies of the policies introduced by the defendant contained each a reference to the application "as a part of this contract" and had annexed to it a copy of the application. But, since the question whether the application was annexed to the contract was for the jury, the short answer to these requests is that they each assume that the

application was annexed, or in other words they each assume the existence of a fact upon which the jury were to pass. But even if the policies were as the defendant contended and even if the application was duly annexed thereto, the statements made in the application would not avoid the policy unless they were made with actual intent to deceive or unless they increased the risk of loss. R. L. c. 118, § 21. We are of opinion that the questions whether the insured made the statement about the cause of her mother's death with intent to deceive, and whether the fact that the mother died of consumption increased the risk of loss, were upon the evidence for the jury. See *Barker* v. *Metropolitan Life Ins. Co.* 198 Mass. 375; *Kelly* v. *Mutual Life Ins. Co.* 207 Mass. 398. Nor could it have been ruled as matter of law that the statement as to previous applications was made with intent to deceive. The jury were instructed that if the statement was made and made with intent to deceive, there would be no liability on the policies. The defendant did not contend that this misrepresentation increased the risk of loss. The question of intent in each matter was properly left to the jury. *Coughlin* v. *Metropolitan Life Ins. Co.* 189 Mass. 538. *Levie* v. *Metropolitan Life Ins. Co.* 163 Mass. 117. *Hogan* v. *Metropolitan Life Ins. Co.* 164 Mass. 448. *Dolan* v. *Mutual Reserve Fund Life Association,* 173 Mass. 197.

The exception to the refusal to give the fourth ruling requested is not argued and in view of its nature we regard it as waived.

The fifth request was properly refused. It does not state the rule of law now in force in this Commonwealth as the result of our statutes. *Barker* v. *Metropolitan Life Ins. Co.* 198 Mass. 375, 383. That case was so recently decided and the discussion, though brief, so clear, that it is necessary simply to refer to it and the cases therein cited. The present case differs materially from the case of *Lee* v. *Prudential Life Ins. Co.* 203 Mass. 299, cited by the defendant.

The sixth request was given in substance. The jury were instructed that it is incumbent upon the plaintiff " to prove that so far as . . . [he] . . . was concerned all has been done that is required on . . . [his] . . . part . . . to make those policies payable, and it must appear affirmatively on [his] behalf . . . that the premiums . . . have been paid, that the policy has become payable

either by the lapse of time when it should become payable, or by the death of the party insured."

The seventh request could not have been given as matter of law. It assumes that the copies produced by the defendant correctly stated the provisions of the policy as to proof of loss and as to the only way in which there could be a waiver by the defendant, an assumption the accuracy of which all along was denied by the plaintiff. One Marcotte, called by the defendant, testified that he lived in New Bedford and was an assistant superintendent of the defendant in 1903 ; that one "Smith was superintendent," and "had charge of all the matters here of the company." One Auger, called by the plaintiff, testified that as the attorney for the plaintiff he had called several times upon Smith ; that the first time he called Smith said "there had been some mistake in making out the proofs of claim in Canada and that other blanks had been sent and that he thought in a short while everything would be all right." That there were several talks afterward between himself and Smith on the same subject, and that "the language of the talk was that everything was all right as far as he [Smith] knew." He further testified that other trouble arose, that this trouble was "concerning the lost policies"; that Smith wanted affidavits about the lost policies and some were given him ; that "there was a third trouble, — Smith wanted to know" "where the girl had worked" and "where she had lived"; that the witness "got that information and gave it to him"; that subsequently Smith said "he had sent all the information on to the company and he presumed everything was all right and that we ought to be getting the check very shortly"; that several times after that Smith told him that "we ought to receive a check before long"; and that Smith also said "he presumed everything was all right, otherwise the company would have notified him about it, that as far as he knew everything was all right concerning the proofs of death, but they wanted this other thing, what became of the policies." That "that was the only thing they wanted" "at that time." Smith, although present at the trial, was not called by the defendant. The defendant did not put any proofs of death in evidence nor was there any agreement as to the kind of proofs required. The requirement of the proofs not being in evidence except by the

copies, the accuracy of which was denied by the plaintiff, and there being evidence that the defendant was satisfied with those sent to it, it is manifest that the judge could not rule as matter of law that they were insufficient.

The eighth request differs from the others. It does not assume as a fact that the copies produced by the defendant are exact, but is applicable only in case the jury should find that to be the fact. In considering this request it is to be borne in mind that the declaration contained four counts of which, as above stated, the first two were upon the policies and the last two were to recover premiums prematurely paid which by reason of the death of Olesime before the time for their payment never became due. Whoever drew this request seems to have lost sight of this fact. If under all the circumstances this request could be regarded as applying only to the counts on the policies, the refusal of the judge to give it, especially in view of the provisions of the policies with reference to proofs of loss and the waiver of such proofs if insufficient, would have presented a serious question; but it cannot be interpreted in that way. The language is clear and comprehensive, and the presiding judge was justified in considering it as applicable to the whole declaration and every count thereof. It is clear that the request in its natural interpretation could not have been given.

The first request has been reserved as the last to be considered. From what has been said as to the course of the trial, especially the attitude of the plaintiff as to whether the evidence of the defendant with reference to the accuracy of the copies was to be believed and as to whether the application was annexed to the policies, it is evident that upon all the evidence the questions, what were the terms of the contract and whether they had been so far performed by the plaintiff or waived by the defendant as to make a case for the plaintiff, were for the jury.

During the trial several exceptions were taken to rulings upon the admissibility of evidence. In considering these exceptions we shall follow the order taken in the defendant's brief. The exception to the exclusion of what Dr. Bouthillier said to Maximen Comeau cannot be sustained. The jury were told that if Olesime had the consumption when the representation was made the plaintiff could not recover. The verdict shows that

the jury found she did not have the consumption at that time. Even if the physician had told the father that he thought she had the consumption, it was no evidence that she had. It had no bearing upon that question at all. It tended only to show that if she had that disease the father had been informed of the fact. Inasmuch as the jury have found that she did not have the disease, the question whether the father thought she had, or represented that she had, is rendered immaterial. Whether therefore the ruling was erroneous at the time it was made it is unnecessary to consider, since the verdict of the jury shows that the defendant could have been in no way harmed thereby.

It is strenuously argued by the defendant that the judge erred in admitting the conversations with Smith, the defendant's agent at New Bedford, and in submitting to the jury the question of waiver of proofs of loss. So far as respects the question of waiver it is to be observed that the defendant took no exception to the charge, and the short answer to the defendant's contention about waiver might be that it is not properly before us so far as arising upon the charge to the jury. But, even if in view of the seventh and eighth requests for rulings, which have been hereinbefore considered, and the charge all taken together, it fairly may be contended that the question of waiver is indirectly raised, it could not have been ruled that there was no evidence of waiver. As we have said in considering the seventh and eighth exceptions, the accuracy of the defendant's copies was all along denied by the plaintiff, and it was a question for the jury what were the terms of the lost policies as to proofs of loss, and whether these terms were complied with by the plaintiff or waived by the defendant. The question of Smith's powers as agent was also for the jury, and unless the copies produced by the defendant were exact the evidence was ample, especially in view of the failure of the defendant to call Smith who was present at the trial, to show that the proofs were either satisfactory to the company or had been waived. There was evidence that Smith was the general superintendent for the defendant in New Bedford, and that he was especially acting for the defendant in this matter. We think that all conversations with him as such agent were admissible.

Several other exceptions to rulings as to evidence were taken

by the defendant. They are not argued upon the defendant's brief. They need no further notice except to say that no one of them seems sound.

*Exceptions overruled.*