IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1916.

MUTUAL LIFE INS. CO. *v.* MRS. ANNIE C. DIBRELL.

*(Knoxville.* September Term, 1916.)

1. **INSURANCE.** Life insurance. Misrepresentations. "Increases risk of loss" "Risk of loss."

Shannon's Code, section 3306, provides that no misrepresentation or warranty made in the negotiations of a policy of insurance, by the assured or in his behalf, shall be deemed material or defeat the policy unless made with actual intent to deceive, or unless it increases the risk of loss. *Held* not to require that the matter represented should be one that contributed to the death of the insured to make the policy invalid; and the phrase "increases the risk of loss" being the same as "increases the risk," and both alike including the risk of loss involved in the issuance of the policy, where insured had been examined four times on three policies in less than four months previous to his application and no policies were issued to him, his statement that he had never been examined for a policy which was not issued as applied for was a material misrepresentation of facts increasing the risk of loss assumed in issuing the policy, which rendered it voidable. (*Post, pp.* 533-542.)

528

Mutual Life Ins. Co. v. Dibrell.

Acts cited and construed: Acts 1895, ch. 160, sec. 22.

Cases cited and approved: White v. Provident, etc., Society, 163
 Mass. 108; Johnson v. Nat. L. Ins. Co., 123 Minn., 453; Empire
 L. Ins. Co. v. Gee, 171 Ala., 435; Barker v. Mutual L. Ins. Co.,
 198 Mass., 384; Van Woert v. Woodmen, 29 N. D., 441; Everson
 v. General, etc., Corp., 202 Mass., 169; Monjeau v. Met. Life Ins.
 Co., 208 Mass., 1; Alden v. Supreme Tent, etc., 178 N. Y., 535;
 Home L. Ins. Co. v. Myers, 112 Fed., 848; Aetna L. Ins. Co. v.
 Moore, 231 U. S., 543; Fishblate v. Fidelity Co., 140 N. C., 589;
 Dolan v. Mutual Reserve, etc., 173 Mass., 197; Johnson v. Nat.
 L. Ins. Co., 123 Minn., 453; Taylor v. Grand Lodge, 96 Minn., 441;
 March v. Metropolitan L. Ins. Co., 186 Pa., 642; U. S. L. Ins.
 Co. v. Smith, 92 Fed., 505; Blenke v. Citizens' I. Ins. Co., 145
 Ky., 332; Masonic L. Ins. Co. v. Robinson, 149 Ky., 80; Am.
 L. Ins. Co. v. Solomon, 233 Fed., 213; Hunter v. Guaranty Co., 129
 Tenn., 572; First Nat. Bank v. Fid. & Guar. Co., 110 Tenn., 10.

Cases cited and distinguished: Ins. Co. v. Stallings, 110 Tenn., 1;
 Schas v. Ins. Co., 166 N. C., 55; U. S. Life Ins. Co. v. Smith, 92
 Fed., 503.

Code cited and construed: Sec. 3306(S.).

2. INSURANCE.  Life insurance.  Question of law.
 Whether a misrepresentation of an insured in applying for a life
  insurance policy increased the risk of loss is a question of law
  either under Shannon's Code, section 3306, or at common law.
  (*Post. pp.* 533-542.)

FROM HAMILTON

Appeal from the Circuit Court of Hamilton County
to the Court of Civil Appeals, and by *certiorari* to the
Court of Civil Appeals from the Supreme Court.—
NATHAN L. BACHMAN, Judge.

137 Tenn.—34

W. B. MILLER, for appellant.

L. D. SMITH, W. T. SMITH, JOE. V. WILLIAMS and NEAL L. THOMPSON, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is an action on a policy of life insurance issued by the Mutual Life Insurance Company, of New York, insuring the life of J. L. Dibrell, for the benefit of his wife, plaintiff below; the insured having died about two months after the policy was issued.

The application for the policy, made on March 3, 1910, set forth that:

"All the following statements and answers . . . are true and are offered to the company as an inducement to issue the proposed policy."

Among the representations made by the insured, claimed to have been relied upon by the company as material misrepresentations, were the one made in response to a question respecting his recent illness, and that made in reply to the question: "State every physician whom you have consulted in the past five years."

We are of opinion, however, that a consideration of the effect of additional representations so relied upon will determine the case without going into the matters just referred to.

It is conceded by complainant that deceased untruthfully answered the following written inquiry made by the medical examiner of the company:

Mutual Life Ins. Co. v. Dibrell.

"20. Have you ever been examined for a policy in any company or association, which was not issued as applied for?  No."

The jury also found under a special issue submitted to it that the insured stated in his application that he had never made application for life insurance to any company or association upon which a policy had not been issued on the plan and premium rate originally applied for.

The jury in response to another issue found that, in making the statements he did in his application and to the medical examiner, insured acted in good faith.

The proof shows that Mr. Dibrell on November 29, 1909, about three months prior to the above application to appellant, made application to the Security Mutual Life Insurance Company, of Binghampton, N. Y., for a policy of $25,000 on his life, ordinary life form, and was examined therefor by two physicians located in this State; that he disclosed in the course of examination the fact that he had been attended by a physician for nervous diarrhœa within six months next preceding, the illness extending over a period of two months; and that the application was declined about January 3, 1910, no policy being issued.  It was further shown in proof that on January 28, 1910, Dibrell applied to the Tennessee Life Insurance Company for a $5,000 policy, ordinary life, making a like disclosure as to recent illness, and that on February 2, 1910, he was declined as a risk.  Further, that on February 11, 1910, he applied

for and was examined for $20,000 of life insurance in another company, and was examined therefor, making a like disclosure, which policy had not been issued as applied for when the application to appellant company was made.

Under a separate issue submitted to it, the jury found that the subject matter of question 20, quoted above, was regarded by the insurance company as material to the risk, in point of fact; and the proof made by appellant's medical director was to the effect that, had deceased truthfully related the facts touching previous examinations and non-issuance of the policies so applied for, the policy in suit would not have been issued.

The record establishes that Mr. Dibrell left his home at Bon Air, Tenn., May 9, 1910, and was not heard from by his family until after his death in the Maxwell House, a hotel in Nashville, eleven days later. The attending physician, while not having undertaken to carefully examine, states that death was to be attributed to alcoholism, "ordinarily called delirium tremens," following a prolonged debauch.

The jury, however, rendered a verdict in favor of appellee, plaintiff below, after a motion for peremptory instructions in favor of the company had been overruled. This verdict was returned under a charge which submitted to the jury the determination of whether or not the misrepresentations "increased the risk."

On appeal to the court of civil appeals, the ruling of the trial judge on the motion for a directed verdict was assigned as one of several errors. That court held that this motion was properly denied in the lower court; and, in construing our Act 1895, quoted below, held that the matter of materiality of ''the risk of loss'' was one for the jury, that phrase in the statute having a meaning not therefore assigned it by courts of last resort. That court's views are best expressed in its opinion:

''We apprehend that there is a difference between matters that might be material in negotiations and as fixing the rate of premium and yet not increase the hazard after a contract has been entered into. For instance, a company might desire to know whether an application had been turned down by other insurance companies; and yet this fact might in a number of cases have absolutely no bearing upon the risk after it had been assumed. It is for this reason that we are of the view that our statute is different from others, and designedly so.''

Acts 1895, chapter 160, section 22 (Code, Shannon, section 3306), in relation to misrepresentations, is as follows:

''That no written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, . . . by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter represented increase the risk of loss.''

This statute is identical with that of Massachusetts (Stat. 1887 chapter 214, section 21) from which it was evidently taken; and the statutes of at least three other States, Minnesota, Alabama, and North Dakota, are identical so far as the last phrase "increase the risk of loss" is concerned.

The decisions of the courts of these States construing their statutes on the point thus contested are peculiarly pertinent.

The courts of these States, as well as this court (*Insurance Co.* v. *Stallings,* 110 Tenn., 1, 72 S. W., 960), have held that the purpose of the statuory provision was to bring technical warranties to the level of representations.

"Misstatements of fact, whether the statement is said to be by the parties a warranty or a representation, are equally misrepresentations, and are placed in each case upon the same footing by the statute which applies to them if the statements are called warranties by the parties no less than if they are mere representations." *White* v. *Provident, etc., Society,* 163 Mass., 108, 39 N. E., 771, 27 L. R. A., 398; *Johnson* v. *National L. Ins. Co.,* 123 Minn., 453, 144 N. W., 218, Ann. Cas., 1915A, 458; *Empire L. Ins. Co.* v. *Gee,* 171 Ala., 435, 55 South., 166; Id., 178 Ala., 492, 60 South., 90.

As to mere representations, the statute is but declaratory of the common law. *White* v. *Provident, etc., Society, supra; Barker* v. *Mutual L. Ins. Co.,* 198 Mass. 384, 84 N. E., 490.

Mutual Life Ins. Co. v. Dibrell.

Therefore it is apparent that if the representation made by the answer to question 20 of the application is one that was held, in cases that arose prior to the passage of such statutes and based on the common law, to be material as affecting the risk, no purpose to change the effect of the representation as bearing upon the "risk of loss" in the original sense of the phrase is found in the statute. In other words, it was not the purpose of the statute to make a further change in common law, as set forth in such decisions, so as to require that the matter misrepresented should be one that contributed to the hazard after issuance of the policy, that is, by the death of the insured, in order to make the policy invalid. *Van Woert* v. *Woodmen,* 29 N. D., 441, 151 N. W., 658; and note the language of *Everson* v. *General, etc., Corp.,* 202 Mass., 169, 88 N. E., 658. The point here relied upon by appellant was not raised in *Monjeau* v. *Metropolitan Life Ins. Co.,* 208 Mass., 1, 94 N. E., 302; nor has it been passed on by the supreme judicial court of Massachusetts.

The common-law rule, in this country and in England, undoubted was and is that, if an applicant falsely state that he had not previously made another application or been examined for any other insurance upon which a policy had not been issued, the matter was so material that the policy was avoided when the statement was not expressly made the subject of a warranty and was deemed to be a mere representation. *Alden* v. *Supreme Tent, etc.,* 178 N. Y., 535, 71 N. E., 104; *Home L. Ins. Co.* v. *Myers,* 112 Fed., 848, 50 C. C. A., 544. And see

*Ætna L. Ins. Co.* v. *Moore,* 231 U. S., 543, 34 Sup. Ct., 186, 58 L. Ed., 356; *Anderson* v. *Fitzgerald,* 4 H. L. Cas., 484.

The materiality of such questions and answers is made plain by any one of several considerations:

(a) If there were a disclosure that there had been an examination, followed by nonissue of policy, the company would thereby be put on guard and would make its own inquiries and physical examination more thorough; or it might see fit to decline outright a risk that another company had refused to take.

(b) If the answer were false, the company was, in all reasonable contemplation deprived of the opportunity sought by it for a discovery as to whether or not the risk had been regarded as unsafe by other insurers. The judgment of the medical staffs of other companies might be deemed of value to the company applied to, but the avenue of approach thereto was at least measurably closed by the false answer.

(c) A further purpose of the clause was to elicit the applicant's anxiety for insurance, if any.

We think it manifest that all of these considerations have a fair relation to the "risk of loss" assumed by the insuring company in the issuance of the policy. As sources of information are revealed, and investigation is pursued, the degree of risk of loss decreases.

It cannot be that the matter misrepresented should necessarily relate to the hazard of loss by the death of of the insured. Such a construction might prevent the company's rescinding the contract because of a

misrepresentation that actually induced the contract, in an action begun promptly after the making of the application and the issuance of the policy. What will not avail to "void the policy," under the statute, it seems equally will not "prevent its attaching," as a contract. We cannot adopt the harsh and radical construction that the legislature meant to deprive the insurer of the right to rescind the policy contract for inducing fraud.

The phrase "increases the risk of loss" is, in our view, the same as that appearing in numerous other statutes, "increases the risk," and both alike include the risk of loss involved in the issuance of the policy. It is conceded by the court of civil appeals, in its opinion, that the decisions in States where the latter phrase is used in the statutes are all to this effect, and that its construction of the statute is "out of harmony with judicial utterances in nearly all the other States."

In the case of *Schas* v. *Insurance Co.,* 166 N. C. 55, 81 S. E., 1014, there was construed the local statute declaring that all statements in an application for insurance shall be construed as representations merely, and not as warranties, and providing that no representation, unless material or fraudulent, shall prevent a recovery, it was said:

"Every fact which is untruly stated or wrongfully suppressed must be regarded as material, if the knowledge or ignorance of it would naturally and reasonally influence the judgment of the underwriter in making the contract at all, or in estimating the degree

or character of the risk, or in fixing the rate of premium. 16 A. and E. Enc. of Law (2 Ed.), 933; Vance on Insurance, 284. This definition was adopted by us in *Fishblate* v. *Fidelity Co.,* 140 N. C., 589, 53 S. E. 354, and has since been approved several times, and is also the definition of other courts. . . .

"It is not necessary, as said in Fishblate's Case, that the act or conduct of the insured, which was represented by him in the application, should have contributed in some way or degree to the loss or damage for which the indemnity is claimed. Whether it was material depends upon how, if at all, it would have influenced the company in the respect we have just stated. The determining factor, therefore, in such case, is whether the answer would have influenced the company in deciding for itself, and in its own interest, the important question of accepting the risk, and what rate of premium should be charged. The questions generally are framed with a view to estimating upon the longevity of the applicant, and any answer calculated to mislead the company in regard thereto should be considered as material."

If the legislature had it in mind to provide to the contrary, it could have done so in apt words. Latterly acts have been passed in some of the States which embody the more stringent provision. In 1909 there was passed in Missouri a statute (Rev. St. 1909, sec. 6937) providing that no misrepresentations should render the policy void, "unless the matter misrepresented shall have actually contributed to the contingency or

event on which the policy is to become due or payable.''
In Kansas (Gen. St. 1915, sec. 5290), the provision is
that the policy is not avoided unless the misrepre-
sented matter contribute to the cause of death.

In Texas (Vernon's Sayles' Ann. Civ. St. 1914, art.
4947), the provision is ''unless . . . the matter or
thing misrepresented was material to the risk or act-
ually contributed to the contingency or event on which
said policy became due and payable''—Thus inferen-
tially treating the two things as distinct.

When the jury replied that the matter of former ex-
aminations or applications had in fact been misrepre-
sented, the other question as to whether it increased
the risk of loss was one of law, under the statute, as it
had been at common law.   Our statute, unlike those in
Texas and Missouri, does not in terms make the latter
question one for the jury.   In the States where the
statutes are identical with ours, it has been held that
the question as to whether a misrepresentation in-
creases the risk of loss may be one of law for the
court.   *Dolan* v. *Mutual Reserve, etc.,* 173 Mass. 197,
53 N. E., 398; *Johnson* v. *National L. Ins. Co.,* 123
Minn., 453, 144 N. W., 218, Ann. Cas., 1915A, 458; *Van
Woert* v. *Woodmen,* 29 N. D., 441 N. W., 224.   And see
*Taylor* v. *Grand Lodge,* 96 Minn., 441, 105 N. W., 408,
3 L. R. A. (N. S.), 114.

Whether the misrepresentation, when so found to be
false by the jury, be material, increasing the risk, was,
after the passage of other but very similar statutes, as
it had been before, one of law for the court.   *March*

v. *Metropolitan L. Ins. Co.,* 186 Pa., 642, 40 Atl., 1100,
65 Am. St. Rep., 887; *U. S. L. Ins. Co.* v. *Smith,* 92
Fed., 505, 34 C. C. A., 506; *Blenke* v. *Citizens' L. Ins.
Co.,* 145 Ky., 332, 140 S. W., 561; *Masonic L. Ins. Co.,*
v. *Robinson,* 149 Ky., 80, 147 S. W., 882, 41 L. R. A.
(N. S.), 505; *American L. Ins. Co.* v. *Solomon,* 233
Fed., 213, — C. C. A., ——.

We conceive, also, that such has been the course of
decision by this court.

In *Hunter* v. *Guaranty Co.,* 129 Tenn., 572, 581, 584,
167 S. W., 692, 694, 695, involving a determination of
liability on a fidelity bond (which falls within the
purview of the act of 1895), speaking of representa-
tions made respecting the cashier who was bonded, it
was said:

"As a matter of course, the representation that
Ward was not in default was material to the risk, and
had it been knowingly made, in another connection,
if false, the bond would have been avoided."

And again touching an issue for the jury in respect
of a removal certificate making statements as to what
was found as to the correctness of the cashier's books
and accounts, it was said:

"Regarding complainants' first issue, inasmuch as
the whole defense was based on the certificate, there
was really no occasion to submit a question of material
misrepresentations to the jury. The representations
in this certificate are undoubtedly material. They are
expressly made so by the contract of the parties. In
so far as the first issue included a submission of the

truth of the representations, it should have gone to the jury.''

This was but in accord with what had been outlined to be the law in the earlier case of *First National Bank* v. *Fidelity & G. Co.*, 110 Tenn., 10, 20, 75 S. W., 1076, 100 Am. St. Rep., 765.

The question did not call for and the answer did not express an opinion, but a fact—in respect to an act done or not done of which the applicant must have had personal knowledge as participant in the transaction, and so recently as to have been in his mind at the time the policy in suit was issued. Any examination made of the applicant for insurance in another company was not only a fact touching his person, but a fixed one, not undergoing change or fluctuation with the running of time.

It has sometimes been contended that the words in the representation as to previous applications ''on the plan and premium rate originally applied for'' is so far ambiguous and confusing to the average lay mind as to make a case for the jury.

In dealing with a similar clause, Judge LURTON neatly replied to this insistence by saying that:

If the insured's ''former applications for insurance had been allowed, but for a less amount, or for a different kind, or at a rate greater than ordinary, there might be some excuse for finding the question confusing, . . . and some excuse if misled by technical insurance terminology into making an untrue answer. But no such facts existed in Smith's case. No policies

of any kind were ever issued upon his applications. He had been rejected out and out. This he knew. . . . These facts made the question most simple. As men of average sense, they both knew that this fact of three former rejections was most vital." *U. S. Life Ins. Co.* v. *Smith,* 92 Fed., 503, 507, 34 C. C. A., 506, 510.

In our opinion, the trial judge and the court of civil appeals should have sustained the company's motion for peremptory instructions, on the uncontradicted proof, which shows that four examinations on three applications had been made of Mr. Dibrell for insurance in other companies, within a period of a little more than the three months prior to his application to appellant company, and that no policies had been issued to him by such other companies. We believe that his representations respecting these examinations and applications, found to be false, render the policy voidable.

'Reversed; the motion being sustained in this court.