**Jerry W. COTHAM, Plaintiff,**

v.

**The HARTFORD FIRE INSURANCE COMPANY, Defendant.**

No. C-2235.

United States District Court,
W. D. Tennessee, E. D.

June 20, 1974.

**1040**

Hewitt P. Tomlin, Jr., Waldrop, Hall, Tomlin & Farmer, Jackson, Tenn., John C. Nowell, Jr., Trenton, Tenn., for plaintiff.

Thomas H. Rainey, Spragins, Menzies & Rainey, Jackson, Tenn., for defendant.

### ORDER

WELLFORD, District Judge.

Plaintiff, a horse trainer and owner, sued under an insurance policy issued him by defendant on a quarter horse stallion, "Mr. Untouchable," which purportedly perished in a fire on January 14, 1972. Policy limits of $35,000.00 were involved on this fine show animal owned by plaintiff at the time of a fire in a barn constructed and improved by plaintiff on his family's property near Trenton, Tennessee. Issues in this case were submitted to a jury which responded to special interrogatories submitted favorably to plaintiff on the fact issues involved. There was substantial and sufficient evidence, if believed, for the jury to find that "Mr. Untouchable" was indeed the horse killed in the fire on that cold night in question and that the horse's death was not due to plaintiff's intentional, negligent or careless conduct.

The real issue in the case upon defendant's motion for a directed verdict (overruled during trial) and defendant's motion for a judgment notwithstanding the verdict for plaintiff revolves about circumstances of plaintiff's answer to a question on the application for insurance. Plaintiff had previous to 1972, done his considerable horse insurance business with one Howard Miller of Harding and Harding in Texas, an agent of American Livestock Insurance Company. Plaintiff called Miller about coverage on "Mr. Untouchable" at or about the time he was acquiring the horse from Tommy Manion in Springfield, Missouri. Miller, as agent, followed usual procedures in applying for coverage with his insurance principal, but that company refused to insure the animal by reason of prior experience in losses [1] with other animals insured by plaintiff Cotham.

Plaintiff denied receiving a rejection notice, or any notification of the refusal by Harding and Harding to insure, which was issued and mailed to his usual home address in August of 1971. During this period of the year plaintiff was away from home a considerable part

---

1. There was evidence showing at the time that six insured horses had previously died while in plaintiff's possession.

of the time, although in November he was suspended from the American Quarter Horse Association and his activities thereafter under that association's rules were seriously restricted as was his ability to show the horse in question. The jury believed plaintiff's version and responded to an interrogatory that plaintiff did not act with intentional deception in his October 16, 1971, response to the following question on his application for insurance:

"Has any company ever rejected an application for insurance or cancelled a policy on . . . the described animal?"

Answer: "No."

At the time, however, it is clear on the proof and no reasonable mind could differ with this conclusion, that the response was false in fact, even if plaintiff did not actually know it was false.[2] This is so despite plaintiff's contention that he never actually *signed* an application with Harding and Harding under the circumstances related.

■ Is this state of facts a sufficient basis as a matter of law for the insurer to void the policy after its issue and thereby avoid paying a $35,000.00 claim? We look to Tennessee law in this diversity case for an answer. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A statute[3] bears directly on the question posed in this case.

"No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, *or* unless the matter represented increases the risk of loss."
(Emphasis added).

Since there was substantial evidence, if accepted by the jury, to show absence of any actual intent to deceive, did the "matter represented increase the risk of loss" on the part of defendant? The underwriting superintendent of defendant who personally examines each application in this particular animal insurance department, testified that the company at his direction would have conducted an investigation of all the circumstances of assuming this particular risk had the response to the question on the application been "yes" instead of "no." This would have, in accordance with defendant's custom and practice, constituted notice of a "hazard" involved.

A similar situation was presented for decision in this Circuit many years ago in the case of Nat'l Columbian Life Ins. Co. v. Harrison, 12 F.2d 986 (6th Cir. 1926), wherein the court stated in a case where the insured had made a similar false statement in an application for life insurance—that he had not been informed of a previous rejection. "His knowledge of the rejection is not important . . . his answer . . . denying any previous rejection, was a misrepresentation which increased the risk of loss, and therefore [was] equivalent to a warranty, and his good faith would not avail." *Harrison, supra,* at 988. To this same effect in another analogous situation, see Standard Life Ins. Co. of the South v. Strong, 19 Tenn.App. 404, 424, 89 S.W.2d 367 (1935) cert. denied (1936). An eminent authority sets out this principle to be the common law:

"As a general rule, a statement by an applicant for insurance as to prior applications or rejections is material as a matter of law, and if false, avoids the policy regardless of the good faith of the applicant and regardless of whether the statement constitutes actual fraud . . . [W]here its

---

2. Plaintiff should have *suspected* something if, as he claimed, he heard nothing from his usual insuror after his request to issue a binder or policy on this valuable horse.

3. Tenn.Code Ann. § 56–1103 (1895).

truthfulness is warranted or made a condition to the validity of the policy, a false statement that the insured has not applied or been rejected for other insurance avoids the policy, even in the absence of knowledge on the part of the applicant that he has been rejected.

43 Am.Jur.2d Insurance, § 816 (1969). *See* Insurance Co. v. Stallings, 110 Tenn. 1, 72 S.W. 960 (1902); Mutual Life Ins. Co. v. Dibrell, 137 Tenn. 528, 194 S.W. 581 (1916); National Life & Accident Ins. Co. v. Lewis, 19 Tenn.App. 459, 89 S.W.2d 898 (1935).

The policy in question contained a provision making the application a part of and subject to all the terms of the policy and stated further that the policy was issued in reliance upon the application statements. Further, the policy contained a condition that the policy would be void if the insured has "concealed or misrepresented any material fact or circumstance relating to this insurance."

The Tennessee statute was first construed to put representations and warranties in an insurance policy on the same footing. *Stallings, supra; Dibrell, supra.* Section 65–1103 of the Tennessee Code was held to be "but declaratory of the common law," *Dibrell, supra,* at 534, 194 S.W. at 582, and

> "The common-law rule, in this country and in England, undoubted was and is that, if an applicant falsely stated that he had not previously made another application or been examined for any other insurance upon which a policy had not been issued, the matter was so material that the policy was avoided when the statement was not expressly made the subject of a warranty and was deemed to be a mere representation." *Dibrell, supra,* at 535, 194 S.W. at 582.

The materiality and importance of disclosure about prior rejections for insurance is discussed in the frequently cited *Dibrell* case at page 536, 194 S.W. at page 582:

> "(a) If there were a disclosure . . . the company would thereby be put on guard and would make its own inquiries . . . . more thorough; or it might see fit to decline outright a risk that another company had refused to take.

> (b) If the answer were false, the company was, in all reasonable contemplation deprived of the opportunity sought by it for a discovery as to whether or not the risk had been regarded as unsafe by other insurers. The judgment . . . of other companies might be deemed of value to the company applied to, but the avenue of approach thereto was at least measurably closed by the false answer.

> (c) A further purpose of the clause was to elicit the applicant's anxiety for insurance, if any.

> We think it manifest that all of these considerations have a fair relation to the 'risk of loss' assumed by the insuring company in the issuance of the policy. As sources of information are revealed, and investigation is pursued, the degree of risk of loss decreases."

An early Tennessee case emphasized the materiality of existence or non-existence of a *fact,* such as prior rejection or cancellation, in contrast to the misstatement about condition or a subjective situation, such as prior nervous, mental or health problems. Blackman v. United States Cas. Co., 117 Tenn. 578, 103 S.W. 784 (1906), cited in Robbins v. New York Life Ins. Co., 18 Tenn.App. 70, 79, 72 S.W.2d 788, 793 (1934).

■ Once it was shown that plaintiff's answer to question #14 in the application about a previous rejection was incorrect, even if not deliberately deceitful, the Court was then called upon to decide as a matter of law whether the misstatement or the misrepresentation was material to increase the risk of loss.

"When it has been determined that the answers of the applicant were untrue, it becomes a question of law for the court as to whether such misrepresentations constitute matter increasing the risk of loss; and a misrepresentation about any matter of sufficient importance, in the opinion of the court, to naturally and reasonably influence the judgment of the insurer in making the contract, is a misrepresentation that 'increases the risk of loss' within the meaning of Section 6126 of the Code."

Standard Life Ins. Co. v. Strong, 89 S.W.2d at 380. *See also* Vol. State Life Ins. Co. v. Richardson, 146 Tenn. 589, 606, 244 S.W. 44 (1922); Hughes Bros. v. Aetna Ins. Co., 148 Tenn. 293, 301, 255 S.W.2d 363, 366 (1923); National Life & Accident Ins. Co. v. American Trust Co., 17 Tenn.App. 516, 545, 68 S.W.2d 971, 988 (1933) cert. denied (1934); National Life & Accident Ins. Co. v. Lewis, 19 Tenn.App. 459, 466, 89 S.W.2d 898, 902 (1935).

The fact that Cotham's misstatement was unintentional but nevertheless untrue, but did not actually have a direct causative relation to the loss of the horse does not take this case out of the rule herein expressed.

" 'These cases show that the thing misrepresented need not necessarily be one that increases the hazard in the sense that it actually occasions or contributes to the loss. If on the contrary the matter misrepresented "increases the risk" involved in the issuance of the policy, in the judgment of the court, then it may avoid the contract. . . .' "

Independent Life Insurance Co. v. Russell, 18 Tenn.App. 622, 626, 80 S.W.2d 846, 848 (1934) cert. denied (1935) citing *Hughes, supra.  See also* Mutual Life Ins. Co. v. Dibrell, *supra.*

▮ Plaintiff did not exercise due diligence to learn the result of his inquiry and initiation of the first application for insurance made by and through his agent, Harding and Harding, and later rejected by American Livestock Insurance Company. He did not seek or inquire to learn the truth about his response to the question in the Hartford Fire Insurance Company application. *See* Robbins v. New York Life Ins. Co., *supra.* A true response would have put the defendant on notice about inquiring into the reasons for plaintiff's "regular" insurer's rejection of coverage on "Mr. Untouchable." The incorrect misrepresentation or warranty or statement, however characterized, increased defendant's risk of loss under Tennessee law. *See* Duncan v. Penn. Mutual Life Ins. Co., 17 Tenn.App. 62, 65 S.W.2d 882, cert. denied (1933). Jefferson Standard Life Ins. Co. v. Webb, 56 Tenn.App. 314, 406 S.W.2d 738 (1966).

▮ There being no right to recover on the policy, and under the facts evident in this case, the defendant did not act in bad faith in declining to honor plaintiff's claim; therefore, plaintiff cannot recover any expense incurred in pursuing his claim.

For the reasons herein stated, the Court should have decided this question at trial as a matter of law and directed a verdict or rendered judgment for defendant.

The motion for judgment despite the jury's responses to interrogatories is accordingly granted. Let this Order be entered for defendant but costs will be assessed against defendant, which will also forthwith refund, together with legal interest, the premium paid by plaintiff.