FIRST TENNESSEE BANK NATIONAL ASSOCIATION and the Federal Land Bank of Louisville, Plaintiffs/Appellees,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant/Appellant.

Court of Appeals of Tennessee, Western Section, at Knoxville.

Sept. 18, 1991.

Application for Permission to Appeal Denied by Supreme Court March 16, 1992.

---

Carl P. McDonald, Goddard & Gamble, Maryville, Rick L. Powers, Arnett, Draper & Hagood, Knoxville, for plaintiffs/appellees.

Archie R. Carpenter, Carpenter & O'Connor, Knoxville, for defendant/appellant.

FARMER, Judge.

This is an appeal from the trial court's order granting judgment notwithstanding the verdict in favor of the plaintiffs, First Tennessee Bank National Association and Federal Land Bank of Louisville. The Chancellor found that the plaintiffs owed no duty to the defendant, USF & G, to disclose certain information relative to the risk being insured by USF & G and that,

therefore, plaintiffs were not precluded from collecting under the policy.

Plaintiffs are secured by deeds of trust on property owned by Thomas Gregory and his then wife, Dena Gregory. The deeds of trust required the Gregorys to maintain insurance on the property. The Gregorys were divorced in December 1983. In August 1984, Dena Gregory went to the Federal Land Bank office in Maryville to check on the status of the loan. While there, she informed a loan officer, Rory Hale, that the Gregorys were recently divorced and that, by the terms of the divorce, she was being required to relinquish all interest in the property. Mrs. Gregory also stated that her former husband, Thomas Gregory, intended to burn the dwelling after Mrs. Gregory signed a quitclaim deed so that he and his sister, Phyllis Graham, could collect the insurance proceeds. Mr. Hale's supervisor, Mike Estes, was present during this meeting. When asked by Mrs. Gregory which insurance company had coverage on the property, Mr. Hale and Mr. Estes stated that Grange Mutual was the insurer. A couple of days later, Mr. Hale prepared a memorandum for his file relating the content of his meeting with Mrs. Gregory; however, no further action was taken at that time.

Mrs. Gregory relayed the same information to Terry Woods, a loan officer of First Tennessee Bank, who discussed the matter with bank attorneys and with Mr. Hale of the Federal Land Bank but did not act on the information per the attorneys' advice.

After Dena Gregory's meeting at Federal Land Bank, a Grange Mutual adjuster contacted Rory Hale and asked to be shown the location of the property. Mr. Hale drove out to the dwelling with the adjuster, who informed Mr. Hale that Grange Mutual planned to put a guard on the house until the policy expired.

Two to four days later, Mr. Hale was contacted by an agent for Tennessee Farmers Mutual Insurance Company, who informed Mr. Hale that the company planned to issue a binder on the property. Mr. Hale did not inform the Tennessee Farmers agent of the information he had received from Dena Gregory. Tennessee Farmers let the binder expire and declined to write a policy on the house.

Since this meant there would be no insurance coverage on the property, Mr. Hale contacted Thomas Gregory's sister, Phyllis Graham, and told her that she needed to obtain insurance in order to comply with the trust deed provisions.

On September 27, 1984, Phyllis Graham contacted USF & G to secure insurance on the property. An agent for USF & G, Gail Crawford, took the application and contacted both mortgagees, First Tennessee and Federal Land Bank. Evidently, the only information Ms. Crawford requested from the mortgagees was their correct names and addresses. USF & G issued a binder on September 27, 1984, and, subsequently a policy providing coverage effective that same day.

On February 25, 1985, the dwelling was destroyed by a fire which was later found to have been set by, or on behalf of, Phyllis Graham and Thomas Gregory.

First Tennessee and Federal Land Bank sued USF & G to recover under the policy. USF & G defended on the grounds that the banks owed a duty to disclose the intention of the insureds to burn the dwelling and that their failure to disclose such material information avoided the policy.

### I. Duty to Disclose

The first assignment of error by USF & G is that the trial court erred in holding that the banks owed no duty to disclose material facts to the insurer, USF & G. The issue before us appears to be one of first impression in this jurisdiction. Under T.C.A. § 56–7–103,

[n]o written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the

matter represented increases the risk of loss.

While the statute expressly refers to written or oral misrepresentations, the statute has also been interpreted to cover material omissions, such as when the insured withholds information which the insurance company has requested. *See e.g., Mutual Life Ins. Co. v. Dibrell,* 137 Tenn. 528, 194 S.W. 581 (1917); *Clingan v. Vulcan Life Ins. Co.,* 694 S.W.2d 327 (Tenn.Ct.App.1985); *Sloop v. Mutual of Omaha Ins. Co.,* 55 Tenn.App. 656, 404 S.W.2d 265 (1965). Generally stated, the insured has the duty to make a fair disclosure of all information material to the risk involved. *Clingan,* 694 S.W.2d at 330. In *Clingan,* this Court held that the insured's failure to disclose a prior back condition on her application for medical insurance rendered the policy void or voidable. *Id.*

Although our research has failed to reveal any controlling cases in this jurisdiction involving a duty to disclose information absent specific inquiry by the insurer, reference to an opinion of the United States Sixth Circuit Court of Appeals and to general contract principles is instructive.

In *Collins v. Pioneer Title Ins. Co.,* 629 F.2d 429 (6th Cir.1980), cited by this Court in *Clingan,* Collins requested his attorney to secure title insurance on a tract of land in Sequatchie County which he was purchasing. Under pressure from Collins to secure a policy which showed no exceptions for pending litigation relative to the property, the attorney did not disclose the litigation to the insurance company. Although Collins was not required to answer questions submitted by the insurance company, the court held that he still owed a duty to disclose information which was material to the risk involved. *Id.* at 434. The court found that, although Collins did not make false statements on the application for insurance, through his agent he failed to disclose material information, the pending litigation, to the insurance company.

Under principles of equity,

each party to a contract is bound to disclose to the other all he may know respecting the subject-matter materially affecting a correct view of it, unless common observation would have furnished the information. Not disclosing facts within the knowledge of one and not the other, would in equity be esteemed a concealment which is both immoral and unjust.

*Perkins v. M'Gavock,* 3 Tenn. 415, 417 (1813). "Common observation" has been found to include "the exercise of ordinary diligence." *Simmons v. Evans,* 185 Tenn. 282, 286, 206 S.W.2d 295, 296 (1947).

In *Simmons,* our Supreme Court held voidable a contract for the sale of a residence where common observation did not reveal that water service to the residence was not available between the hours of 7:00 p.m. and 7:00 a.m. The defendant sellers knew the buyers were unaware of this material fact and that disclosure of such fact would have influenced the buyers not to purchase.

In determining whether the banks here had a duty to disclose, we note that, traditionally, courts have considered insurance contracts to be "uberrimae fidei [requiring complete good faith, with no concealment] and a failure by the insured to disclose conditions affecting the risk, of which [the insured] is aware, makes the contract voidable at the insurer's option." *Stipcich v. Metropolitan Life Ins. Co.,* 277 U.S. 311, 316, 48 S.Ct. 512, 513, 72 L.Ed. 895 (1927). *See also Domestic Sewing Mach. Co. v. Jackson,* 83 Tenn. 418, 425 (1885); *Macon County Livestock Market v. Kentucky State Bank,* 724 S.W.2d 343, 349 (Tenn.Ct. App.1986).

█ Further, we note that the trust deed provisions required the Gregorys to maintain insurance on the dwelling. In fact, Thomas Gregory's sister, Phyllis Graham, obtained the policy with USF & G after Mr. Hale called her and instructed her to obtain coverage. Under the terms of the policy, the lenders, First Tennessee Bank and Federal Land Bank, were made parties to the insurance contract as mortgagees. The result was a separate and independent contract between the mortgagees and USF & G. *Laurenzi v. Atlas Ins. Co.,* 131 Tenn. 644, 655, 176 S.W. 1022, 1024 (1915). The

banks certainly were aware at the time they were contacted by USF & G that, if USF & G issued a policy, the banks would be insured.

For the foregoing reasons, we find that First Tennessee and Federal Land Bank owed a duty to USF & G to disclose information material to the risk which USF & G would not have discovered through common observation or the exercise of ordinary diligence.

## II. Information Material to the Risk

■ Alternatively, the banks argue that even if a duty was owed to the insurance company, that the information they failed to disclose was not material. Whether or not matters withheld were material to the risk is a question of law for the court to decide. *Volunteer State Life Ins. Co. v. Richardson*, 146 Tenn. 589, 597, 244 S.W. 44, 46 (1922); *Mutual Life Ins. Co. v. Dibrell*, 137 Tenn. 528, 539, 194 S.W. 581, 583 (1916); *see also Collins*, 629 F.2d at 434.

■ In this case, we have little difficulty in finding that the information possessed by First Tennessee and Federal Land Bank was material to the risk being insured. The risk insured against was the destruction of the dwelling by fire. This was the exact occurrence, according to Dena Gregory, which Thomas Gregory and Phyllis Graham intended to bring about by burning the home. While loan officers at both banks testified that they did not take Mrs. Gregory's statements seriously, they obviously took the information seriously enough to consult their superiors and bank attorneys for advice. In addition, the banks knew that another insurance company, Grange Mutual, considered the information important enough to place a guard on the home until the expiration of its policy.

■ Information is material to the risk being insured when it increases the risk of loss. *Dibrell*, 137 Tenn. at 539, 194 S.W. at 583; *Collins*, 629 F.2d at 434. This includes " 'any matter of sufficient importance, in the opinion of the court, to naturally and reasonably influence the judgment of the insurer in making the contract....' " *Duncan v. Penn Mut. Life*

*Ins. Co.*, 17 Tenn.App. 62, 88–89, 65 S.W.2d 882, 896 (1933) (quoting Crawford's Digest, § 4, p. 3574); *see also Bauer v. Mutual of Omaha Ins. Co.*, 62 Tenn.App. 189, 199–200, 460 S.W.2d 366, 370–71 (1969). We believe the banks should have been put on notice that the matter was of sufficient importance to have naturally and reasonably influenced the judgment of USF & G in issuing its policy. Common observation would not have revealed the intention of the insureds to burn the dwelling, and the banks apparently made a conscious decision not to disclose this information.

■ The banks, however, have argued that their decision not to divulge this information was mandated by federal law. Federal regulations provide that:

**Subpart G—Releasing Information**
§ 618.8300 General regulation.

Except as necessary in performing official duties or as authorized in the following paragraphs, no director or employee of a bank, association, or agency thereof shall disclose information of a type not ordinarily contained in published reports or press releases regarding any such banks or associations or their borrowers or members.

12 CFR § 618.8300. The regulations further provide that:

§ 618.8320 Data regarding borrowers and loan applicants.

(a) Except as provided in paragraph (b) of this section, the directors, officers, and employees of every bank and association shall hold in strict confidence all information regarding the character, credit standing, and property of borrowers and applicants for loans. They shall not exhibit or quote the following documents: Loan applications; supplementary statements by applicants; letters and statements relative to the character, credit standing, and property of borrowers and applicants; recommendations of loan committees; and reports of inspectors, fieldmen, investigators, and appraisers.

12 CFR § 618.8320(a).

The banks contend that their disclosure of a possible plan by Thomas Gregory to

burn the dwelling would have violated these regulations. It seems clear from the language of the regulations that their primary purpose is to protect the confidentiality of loan borrowers and applicants. These regulations, however, by their very terms contemplate that exceptions to the confidentiality requirements will sometimes be necessary. Thus, the regulations set out some exceptions, *see e.g.*, 12 CFR § 618.-8320(b), and a general exception for the bank employee or officer's performance of official duties. Although few reported cases exist dealing with these regulations, one court has noted that the regulations create a reasonable expectation of confidentiality on the part of borrowers. *Interstate Production Credit Ass'n v. Fireman's Fund Ins. Co.*, 128 F.R.D. 273, 278 (D.Or.1989).

The banks argue that Thomas Gregory's intent to burn the dwelling was "information regarding [his] character" under 12 CFR § 618.8320(a) and, as such, could not be divulged. While his intent to burn the dwelling may have had a bearing on Gregory's character, we are not convinced that the regulations were meant to prevent the disclosure of this type of information. The same regulation prohibits the disclosure of information relative to the borrower's property and credit standing.

The terms of the trust deeds, however, included the requirement that the Gregorys maintain insurance on the dwelling and the banks were listed as mortgagees. Such requirements may necessitate the disclosure of certain information concerning the insured property, and it is difficult to believe that Thomas Gregory had a reasonable expectation of confidentiality as a matter such as this regarding risks to the property.

Finally, the mortgagee banks argue that, under T.C.A. § 56-7-804, they are not precluded from recovering under the policy. T.C.A. § 56-7-804 provides the following:

When any person shall as ... mortgagee, ... possess or have any fire insurance policy on realty made payable to such person, ... then such insurance as to the interest of the ... mortgagee, ... shall not be invalidated by an act or neglect of the mortgagor owner of the property so insured, ... provided, that ... the mortgagee, ... shall notify the insurance company of any ... increase of hazard which shall come to the knowledge or the mortgagee....

The banks argue that the above statute requires them to report only an increase in hazard *after* the policy is in effect. We find this argument to be without merit. We hold that the banks did have a duty to disclose this information, which was material to the risk, when they were contacted by USF & G, knowing that if a policy was issued the banks would be a party to the insurance contract. First Tennessee and Federal Land Bank having failed to disclose such information, USF & G may avoid the policy and the banks are precluded from recovering thereunder.

The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellees for which execution may issue if necessary.

CRAWFORD and TIPTON, JJ., concur.