# KENNETH SLOOP v. MUTUAL OF OMAHA INSURANCE COMPANY.—404 S.W.(2d) 265.

Eastern Section. November 30, 1965.

Certiorari Denied by Supreme Court April 18, 1966.

Charles C. Guinn, Etowah, for appellant Kenneth Sloop.

Goins, Gammon, Baker & Robinson, Chattanooga, for appellee Mutual of Omaha Ins. Co.

COOPER, J.  Kenneth Sloop brought this action to recover disability benefits under two separate health and accident insurance policies issued by the defendant Mutual of Omaha Insurance Company, and to recover the statutory penalty provided by T.C.A. 56-1105.

The first policy, which provides for payment of disability benefits in the amount of $200.00 per month, was issued in 1954. The second became effective on November 14, 1962, and provides for payment of benefits in the amount of $100.00 per month.

Claims were filed under both policies in September, 1963, the plaintiff contending that he was totally disabled from degenerative arthritis in both knees, and that the disability was activated by a fall in July, 1963. After investigation, the defendant company began paying benefits under the older policy, which contained a two year incontestability clause, but denied liability under the policy issued on November 14, 1962. This suit was the result.

The Chancellor, noting that the defendant was paying all benefits due under the first policy prior to the filing of the bill, sustained a demurrer to that part of the bill of

complaint based on the earlier policy. The propriety of the Chancellor's action is not questioned by this appeal.

After trial by deposition, the Chancellor found that (1) the conditions which produced the complainant's crippling disability existed before the policy in question was issued, and (2) that the issuance of the policy was procured by Kenneth Sloop's misrepresentations as to the condition of his health. Based on these findings, the Chancellor denied recovery.

The complainant has appeal insisting that the Chancellor's findings were erroneous, and that the Chancellor erred in failing to find that the defendant had waived, and was estopped from relying upon, the defense of (a) misrepresentations in the application, and (b) non-coverage of the conditions which produced the complainant's crippling disability.

The 1962 policy of insurance provides that payment of benefits will be made "when injuries or sickness results in total loss of time beginning before your retire-tirement, * * * beginning on the date of the first medical treatment during such loss; * * *."

" 'Injuries' means accidental bodily injuries received while this policy is in force *and resulting in loss independently of sickness* and other causes." (Emphasis supplied.)

" 'Sickness' means sickness *contracted while this policy is in force.*" (Emphasis supplied.)

Before issuing a policy of insurance, the defendant requires the completion of a formal written application, which includes numerous questions concerning the medical history of the applicant. In the present case, this application was prepared by defendant's agent from in-

formation given by the complainant, and was signed by the complainant with the assurance that:

"I represent that my above answers and statements are true and complete to the best of my knowledge and belief and agree that: (1) the Association is not bound by any statement by or to any agent unless written on this application, (2) no insurance will be effective until a policy has been issued, (3) the Association may correct any apparent errors in premiums on this applicant, and (4) any physician who has attended or hospital that has admitted me or my Dependents is authorized to give the Association any lawful information so acquired."

In the application for insurance, complainant answered all questions concerning his medical history in the negative with the exceptions (1) that he had had polio as a child, with a complete recovery, (2) that he had injured a foot in 1959, and (3) had had a single attack of hepatitis in 1961. Dr. Kenneth Frye and Dr. Boyd McClark, both of Etowah, Tennessee, were listed as treating physicians for the injured foot and the attack of hepatitis.

On receipt of the application, the company issued the policy in question with a rider excluding coverage of "disease of or injury to the hips". The complainant refused to accept the policy with the rider, and secured a statement from Dr. Frye, his family doctor, that he had had no involvement of the hips as the result of his early polio attack. The company made no further inquiry as to complainant's physical condition, but re-issued the policy with a rider similar to the one in the 1954 policy excluding coverage of "disease of or injury to the right hip."

Complainant, while working in a restaurant in July, 1963, fell striking his knees upon the floor. He continued

to work daily until August 31, 1963, when the restaurant closed. On September 3, 1963, he was examined by Dr. Kenneth Frye of Etowah, who reported that the complainant was severely crippled and totally disabled as the result of arthritis in both knees. Claims were filed with the defendant under both policies of insurance, with the result heretofore stated.

Considering first the Chancellor's finding that the issuance of the policy was procured by complainant's misrepresentations as to the condition of his health, the record shows that in addition to the medical treatment set out in the application, complainant had been hospitalized in 1960 for psychiatric treatment of an "anxiety reaction", and that, while undergoing treatment, he had suffered two grand-mal seizures.

Complainant was then referred to a neurosurgeon who performed a lumbar puncture, and prescribed medication to prevent future convulsive seizures. According to the history given the neurosurgeon, complainant was then having increased difficulty in walking, and had fallen two or three times.

Complainant, during his stay in the hospital, was also examined by Dr. Houston Price, an orthopedic surgeon.

The complainant filed a claim under the 1954 policy covering a period of time which included the time of hospitalization. However, no mention was made of the hospitalization, the grand-mal seizures, the lumbar puncture, the medication prescribed, the neuro examination or the orthopedic examination, nor were the names of the treating or examining doctors given. The basis of the claim was "sprain of the left ankle" in an automobile

accident, and the reporting doctor was Dr. W. K. Frye of Etowah.

In the summer of 1962 (about five months before the application for insurance was made), complainant was referred to Dr. David P. McCallie, a prominent internist in Chattanooga, for examination and treatment. Dr. McCallie testified that complainant's "principal complaints were of anxiety, leg pains, restlessness in his legs, weakness in the lower extremities and he and I felt that all of this was related to loss of use of both lower extremities from polio in childhood. * * * He [the complainant] said that he had not noticed an increase in the atrophy of the muscles, that they were at this time, 1962, just like they had always been as far as the general appearance of his extremities were concerned but his ability to use his legs had decreased considerable. [H]e stated, as an example, to put the brakes on in his automobile he would have to lift his right leg up with his hand to get it up where he could put it on the brake pedal. He admitted to considerable nervous difficulty, trembling, shaking, insomnia but that was considerably relieved at the time I saw him by medication given him by Doctor Frye."

Dr. McCallie then referred complainant to Dr. Bennett Caughran for orthopedic examination.

No mention of these physical difficulties was made in the application, nor were the treating and examining physicians listed.

When questioned concerning the failure to give full medical information, the complainant stated that the 1960 hospitalization was merely to recover from a "drunk" (which was contra to all medical testimony), and that the 1962 treatment was to recover from a generally run-

down feeling which he attributed to the earlier attack of hepatitis, and that he felt the defendant's agent knew of the visits to several of the doctors as he had told him in general conversation, but not at the time the agent was taking the information to complete the application for insurance.

■ "It is the duty of the insured when he signs an application or accepts the policy, if he knows or has any reason or ground to believe that he has any disease or is in unsound health, * * * [to make a fair disclosure of the facts to the insurer. Knights of Pythias v. Rosenfield [Rosenfeld], 92 Tenn. 508, 22 S.W. [204] 504; Harris v. [Security Mut. Life] Insurance Co., 130 Tenn. 325, 170 S.W. 474 [L.R.A. 1915C, 153]." Norvill v. Mutual Benefit Health & Accident Ass'n, 14 Tenn.App. 396; Little v. Washington National Ins. Co., 34 Tenn.App. 593, 241 S.W.(2d) 838.

However, "[n]o written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increase the risk of loss." T.C.A. 56-1103.

■ Under this statute, "[a]ny misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that 'increases the risk of loss' within the meaning of the statute." Little v. Washington Nat. Ins. Co., supra. And when it has been determined that the answers contained in the application were untrue it becomes a question of law for the court as to whether such misrepre-

sentations materially "increase the risk of loss" within the meaning of the statute. Little v. Washington National Ins. Co., supra; Norvill v. Mutual Benefit Health & Accident Ass'n, supra; Standard Life Ins. Co. of the South v. Strong, 19 Tenn.App. 404, 89 S.W.(2d) 367; National Life & Acc. Ins. Co. v. Lewis, 19 Tenn.App. 459, 89 S.W. (2d) 898.

As we have seen, the complainant in making application for insurance failed to disclose an "anxiety condition" of such severity as to require hospitalization and psychiatric treatment in 1960, two grand-mal seizures while in the hospital, treatment by a neurosurgeon, and more important, a known, progressive and noticeable decrease in complainant's ability to use his lower extremities, resulting in numerous falls.

We think, as did the Chancellor, that the concealed physical disabilities were such as would naturally affect the judgment of the defendant in issuing the 1962 policy of insurance and were material to the risk.

■■ We are also in agreement with the Chancellor's finding that complainant's disability existed before the 1962 policy was issued, and, as a consequence, was not covered under the policy provisions limiting coverage to disability for sickness and/or accidents which occur after the effective date of the policy.

As heretofore noted, the complainant was examined by a neurosurgeon and several orthopedic surgeons in the months before complainant made application for insurance. Each of these surgeons examined the complainant after he filed claim for disability, and, while they agreed that complainant was disabled within the meaning of the 1954 and 1962 policies, they testified that his condition

was the same as it was when they examined him prior to the issuance of the policy.

■ Complainant, in his brief, takes the position that the defendant waived, and is estopped to rely upon, "any omission of details, or 'misrepresentations' in the application as a defense to the bill." In support of this position, the complainant insists that the defendant did not rely upon the application in issuing the policy, but relied upon the full detailed information on insured's condition of health reflected in the company's records.

The record shows that the application for insurance was made a part of the policy, and a coup was issued with the policy. The application made reference to the 1954 policy and to claims filed thereunder, and it is reasonable to assume the defendant examined the claims and the earlier policy as it included a rider on the 1962 policy similar to the one in the 1954 policy. But even so, such an examination could not reveal complainant's true physical condition, nor would it reveal illnesses, accidents, or medical treatment of such a nature as to suggest to the defendant that an inquiry as to the condition of complainant's health, other than the questions set forth in the application, would be fruitful. To the contrary the claim filed in 1960, based as it was on a disability allegedly resulting from a "sprain of the left ankle" received in an automobile accident, served to screen the real cause of the disability, or at least the causes of complainant's hospitalization during the period of disability—the "anxiety reaction", and the grand-mal seizures—thus serving to mislead the defendant.

Further, the record shows that the defendant had no knowledge, either through the filing of claims or through information given its agent or included on the applica-

tion of the physical difficulties which required complainant to seek the services of Dr. David McCallie and Dr. Bennett Caughran in 1962.

National Life & Accident Ins. Co. v. Lewis, 19 Tenn. App. 459, 89 S.W.(2d) 898, involved an assertion of waiver of policy provisions by the insurer, but the court held that the insurer does not waive its defenses in the absence of full knowledge, which was not present in that case as it was not present in the case now before us. See also Life & Casualty Ins. Co. of Tennessee v. Jackson, 48 Tenn.App. 27, 342 S.W.(2d) 720; Commonwealth Life Insurance Vo. v. Anglin, 16 Tenn.App. 530, 65 S.W.(2d) 239, 243.

■ Complainant also asserts as ground for the application of the doctrine of waiver and estoppel against the defendant the fact that the defendant accepted a premium payment on the 1962 policy after claim for disability had been filed, and failed to tender its return for several months. We find no merit in this insistence in view of evidence (1) that the payment was accepted while the claim was under investigation and before any information adverse to complainant's claim had been developed, and (2) that the delay in completing the investigation and in tendering the return of the premium was due to complainant's lack of cooperation, and his consistent denial that he had seen any doctors for examination or treatment of his legs in the months before making application for insurance, forcing the defendant to develop its own leads.

For the indicated reasons, the Chancellor's decree is affirmed. Costs incident to the appeal are adjudged against the complainant, Kenneth Sloop, and his surety.

McAmis, P.J., and Parrott, J., concur.