Palmer W. COLLINS and H. L. Clark, III, Plaintiffs-Appellees,

and

William M. Ables, Jr., Defendant-Appellee,

v.

PIONEER TITLE INSURANCE CO., Defendant-Appellant.

Palmer W. COLLINS and H. L. Clark, III, Plaintiffs-Appellees,

v.

PIONEER NATIONAL TITLE INSURANCE CO., Defendant,

and

William M. Ables, Jr., Defendant-Appellant.

Nos. 78–1100, 78–1101.

United States Court of Appeals, Sixth Circuit.

Argued April 1, 1980.

Decided July 16, 1980.

Rehearing Denied Sept. 10, 1980.

George M. Derryberry, Miller & Martin, Chattanooga, Tenn., Val Sanford, Gullett, Steele, Sanford & Robinson, Nashville, Tenn., for Pioneer Title Ins. Co.

William T. Alt, Scruggs, Seal & Alt, Chattanooga, Tenn., for Collins and Clark.

Craig Cook, Noone, Stringer, Powers & Schulman, J. Stringer, Chattanooga, Tenn., for Ables.

Before ENGEL and MARTIN, Circuit Judges, and FEIKENS, District Judge.*

FEIKENS, District Judge.

This is an appeal of a judgment based on a jury's verdict finding Pioneer National Title Insurance Co. ("Pioneer") liable on a policy of title insurance and finding attorney William M. Ables, Jr. ("Ables") liable for negligence. Pioneer also appeals the judgment based on the jury's verdict denying damages on its cross-claim against Ables.

The case has a lengthy history. In October, 1971, Palmer W. Collins ("Collins"),[1] a Florida attorney, secured an option to purchase a tract of land in Tennessee's Sequatchie County. The option contract, after extensions, expired on February 28, 1972. Prior to that date the owners of the property entered into a sales contract for the same tract of land with a second buyer, Chalupsky. The sales contract with Chalupsky provided that

> this sales agreement shall be subject to closing of sale on prior agreement, seller's have with Palmer Collins & Associates, which expires February 28, 1972.

Collins' attorney, defendant Ables, reported to Collins on February 27 or 28 that the title to the land was clear. Collins then contacted the sellers' attorney, Keene, and agreed orally to close the sale and to formally do so the following week at Keene's office in Cleveland, Georgia. In a case related to this matter[2] another court found four years later that Collins did not contact Keene until February 29, and based on that fact, granted specific performance of the contract and ownership of the land to Chalupsky.

Collins first learned of the second (Chalupsky's) sales contract at the March 3 meeting in Georgia at which his closing was to take place. The sellers were apparently reluctant to proceed with the sale to Collins; perhaps one reason was the fact that Chalupsky had agreed to a purchase price $8,000 higher than Collins. In any event, Collins and the sellers did agree to proceed with the sale. They executed an escrow agreement whereby Collins deposited the down payment—$20,000—into an escrow

---

* Honorable John Feikens, Chief Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. Collins was initially the sole prospective purchaser. Prior to the actual purchase, he was joined in the endeavor by his law partner, Clark. Collins maintained primary interest in the purchase and in prosecuting this action. Therefore, in order to avoid further confusion of names in the opinion, references to Collins will refer to the interests of Collins and Clark.

2. *Chalupsky v. Colston, et al.*, Civil # 6815 (E.D.Tenn.1976).

**432**

account of which Keene was named agent. Ables, who had acted as Collins' attorney in the title examination and the only Tennessee attorney involved, was directed to draft the deed. The agreement provided that upon recording of the deed, the money held in escrow would be released.

Within a few days of the March 3 meeting, Ables and Collins were notified by the real estate agent for Chalupsky that he intended to enforce his claim to the land. Chalupsky filed his lawsuit (*see* footnote 2) on March 13, initially naming as defendants only the sellers. Ables was informed of the lawsuit within a day or two of its filing when he was retained by the sellers to defend them in Chalupsky's suit. Collins testified at trial that he learned of the lawsuit on March 21 from Keene, and that he immediately instructed Keene to retain the down payment in the escrow account pending the outcome of the Chalupsky litigation.

A warranty deed was executed by sellers to Collins in mid-March and returned to Ables for recording.[3] Ables recorded the deed on March 22 and thereafter believed that Collins' right to the land was superior to Chalupsky's.[4]

Collins, however, took no chances. On March 21, 1971, he instructed Keene, the escrow agent, not to release the down payment until the litigation was completed (Trial Exhibit 20). Collins had also requested Ables to secure a policy of title insurance

for the property. (Trial Transcript 362.) Ables was aware that title insurance on the property would be subject to the Chalupsky litigation. He wrote to Collins that he would "order the title policy, if you wish for me to do so, subject to the litigation which is coming out of this matter." (Trial Exhibit 24.) Collins, however, insisted on a policy which showed no exceptions for the Chalupsky litigation and conditioned release of the down payment on obtaining such a policy. (Trial Exhibit 29.) Ables was also under pressure from the sellers to have the down payment released. (Trial Exhibit 28.) Whether or not as a result of these pressures, on April 20, 1972, Ables submitted an Attorney's Preliminary Report on Title to Pioneer which listed some minor exceptions to clear title, but showed no reference to the Chalupsky litigation. (Trial Exhibit 2, Appendix 246–249.) Ables sent Collins a copy of the preliminary report and a cover letter which he had submitted to Pioneer.[5]

Ables was then an "approved attorney" for Pioneer.[6] Based solely on the information Ables submitted (Trial Transcript 326), Pioneer issued an owner's binder which did not list the Chalupsky claim as an exception to Collins' clear title. The owner's binder was sent to Collins on May 1, 1972.[7] Ables subsequently sent a Final Certificate to Pioneer in December, 1972, and Pioneer then issued a policy of title insurance on January 11, 1973. The policy listed standard exceptions and special exceptions for taxes due

---

3. The deed was backdated to February 28, 1972. (Trial Exhibit 6.)

4. Ables' belief that Collins' claim to the land was superior to Chalupsky's up until the district court's decision in *Chalupsky, supra*, was apparently due to two factors: (1) Collins and Keene told him that the telephone conversation at which they orally agreed to the sale occurred February 28 when Chalupsky's sales contract was still subject to Collins' option. The district court in *Chalupsky* found that the call in fact took place on February 29; (2) When Ables recorded the deed on March 22, no *lis pendens* for the Chalupsky case was on file.

5. Collins admitted at the trial that he had received a copy of Ables' preliminary report and the letter Ables sent to Pioneer. Whereupon, this testimony appears:

"Q All right. Now, is there anything said in the letter about this other contract of Mr. Chalupsky or about the lawsuit?
"A No. None that I see." (Trial Transcript 61.)

6. The legal consequences of being an "approved attorney" in Tennessee is a matter of some dispute. It is at the least a fact, however, that Pioneer accepted opinions as to title defects *vel non* from "approved attorneys" without further title examination, but did not normally so accept opinions from others. (Trial Transcript, p. 301.)

7. An "owner's binder" is a commitment to insure, subject to the conditions listed in the binder. (Trial Transcript, p. 166.)

since 1973 and two outstanding deeds of trust.[8] Neither Ables nor Collins informed Pioneer of the Chalupsky lawsuit until several months after the policy was issued. In May, 1973, when it appeared that Collins and Clark would be added as defendants in the *Chalupsky* case (they were added in July, 1973), Collins informed Pioneer of the lawsuit and requested that it represent him pursuant to the terms of the policy of insurance. As a result of the *Chalupsky* case, Collins lost his claim to the land. He was, however, reimbursed for all or nearly all of the expenses he incurred; the sellers returned all amounts with interest paid towards the purchase price and Collins released them from any further claims.

Collins thereafter brought this suit in the United States District Court for the Middle District of Florida from which it was transferred to the Eastern District of Tennessee in March, 1977. At trial the jury found Pioneer liable to Collins on the policy in the amount of $50,000 and Ables liable to Collins for negligence in the amount of $5,000. Pioneer and Ables separately moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The district judge denied both motions in an opinion filed December 6, 1977. Both parties appeal.

Pioneer and Ables argue that Collins' conduct as a matter of law precludes recovery of damages. We agree. Collins cannot recover from Pioneer because his agent, Ables, misrepresented the status of the title by failing to disclose the Chalupsky claim to Pioneer. Such misrepresentation voids the policy of title insurance. Collins is estopped to recover damages from Ables because he knew that Ables had not disclosed the Chalupsky claim to Pioneer and thus he is *in pari delicto* with Ables.

We apply Tennessee law in this diversity case. Although the few reported Tennessee decisions dealing with title insurance are not on point, title insurance policies, unless qualified by statute, "are subject to the rules generally applicable to contracts of insurance." 1 *Couch on Insurance 2d* § 1:101; Johnstone, "Title Insurance," 66 *Yale L.J.* 492, 496 (1957); *cf. Castleman Construction Co. v. Pennington*, 222 Tenn. 82, 432 S.W.2d 669 (1968); *Allpress v. Lawyers Title Insurance*, 218 Tenn. 673, 405 S.W.2d 572 (1966).

Under Tennessee law Collins had a duty "to make a fair disclosure of the facts [of the risk involved] to the insurer." *Bauer v. Mutual of Omaha*, 62 Tenn.App. 189, 460 S.W.2d 366, at 370 (1970); *Knights of Pythias v. Rosenfeld*, 92 Tenn. 508, 22 S.W. 204 (1893). The common law duty of disclosure was recognized by the United States Supreme Court in *Stipcich v. Metropolitan Life Insurance Co.*, 277 U.S. 311, at 316, 48 S.Ct. 512, at 513, 72 L.Ed. 895 (1927):

> Insurance policies are traditionally contracts *uberrimae fidei* * and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option.

In the ordinary practice the duty of disclosure has been relaxed. Most insurers require an applicant for insurance to answer questions prepared by it; "information not asked for is presumably deemed immaterial." *Stipcich, supra,* at 316, 48 S.Ct. at 513. Most applications for insurance are prepared by or with the assistance of an agent for the insurer. As a result, an

---

8. Pioneer argued at the trial and on appeal that one of the standard exclusions applied to exclude Collins' claim based on the Chalupsky lawsuit, to-wit:

"Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder; . . . ."

That question of interpretation of the contract was presented to the jury, and it was decided adversely to Pioneer.

* "Complete good faith, with no concealment."

applicant for insurance wishing to conceal information from an insurer must in most cases give a false or misleading statement. In contrast, Collins was not required to answer questions prepared by Pioneer; Pioneer relied on the certificates of title prepared by Ables. While Collins did not make a false statement on an insurance application, Collins through his agent, Ables, failed to disclose Chalupsky's claim to Pioneer.

 The insured's duty "to make a fair disclosure of the facts" means that he or she must disclose information which is material to the risk involved. *Sloop v. Mutual of Omaha*, 55 Tenn.App. 656, 404 S.W.2d 265, 268 (1965). Whether information not disclosed is material is a question of law for the court. *Mutual Life Insurance v. Dibrell*, 137 Tenn. 528, 194 S.W. 581, at 583 (1916); *Harris v. State Farm Mutual Insurance*, 232 F.2d 532, 535 (6th Cir. 1956). The standard for materiality was established by the Tennessee legislature.

> No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.
>
> TCA § 56–7–103 (formerly § 56–1103).[9]

 The record shows that Collins first advised Pioneer of the Chalupsky lawsuit in May, 1973, several months after the policy was issued. It is obvious that Chalupsky's claim to the property significantly "increase[d] the risk of loss" and therefore the information not disclosed was material within the definition of the statute. The misrepresentation in the Attorney's Preliminary Report on Title filed by Ables on behalf of Collins therefore rendered the policy of title insurance void. *Dibrell, supra*, 137 Tenn. 528, 194 S.W. 581; *Sloop, supra*, 55 Tenn.App. 656, 404 S.W.2d 265.

Despite the fact that Collins did not deal directly with Pioneer prior to the issuance of the policy, he knew that Pioneer was not informed of Chalupsky's claim. He admitted that he had received a copy of Ables' Preliminary Report on Title and an owner's binder from Pioneer, neither of which mentioned Chalupsky's claim. Furthermore, he knew the importance of the Chalupsky claim to the risk assumed by Pioneer. He had earlier insisted on a policy which showed no exception for the Chalupsky litigation. We simply do not believe that Collins, an attorney with experience in land dealings, expected that Pioneer would insure the title without exception for Chalupsky's claim, then being litigated, if it knew all of the facts.

 The remaining question is whether Collins' judgment against Ables may stand. Since Collins knew that Ables did not disclose Chalupsky's claim to Pioneer, and failed then to do so himself, he is *in pari delicto* with Ables. It is well-established in Tennessee law that one who is himself guilty of inequitable, immoral, or fraudulent conduct cannot maintain a claim concerning the same matter against another for similar actions. *Continental Bankers Life Insurance Co. v. Simmons*, 561 S.W.2d 460 (Tenn.App.1977); *Simmons v. Mansfield Drug Co.*, 93 Tenn. 84, 23 S.W. 165, at 168 (1893); *Owens v. Owens*, 21 Tenn.App. 104, 106 S.W.2d 227, 231 (1937); *Memphis Keeley Institute v. Keeley Co.*, 155 F. 964 (6th Cir. 1907). Both Collins and Ables are guilty of such conduct, and Collins therefore is estopped to show that he has been injured by Ables. *Continental Bankers, supra*, 561 S.W.2d at 964.

---

**9.** One early Tennessee case held that the statute did not apply where the insured concealed information by silence. *Hughes v. Millers' Mutual Life Insurance*, 147 Tenn. 164, 246 S.W. 23 (1922). But more recent Tennessee decisions hold that the insured's duty of fair disclosure to the insurer is the same whether it is breached by giving false statements or by failing to give the full information known to the insured about matters material to the risk, if the insurer does not otherwise know of the information. *Sloop v. Mutual of Omaha, supra*, 404 S.W.2d at 268; *Bauer, supra*, 460 S.W.2d at 370.

■ Notwithstanding the foregoing analysis, Collins also argues that Ables, as the attorney involved in handling the application for title insurance, acted as Pioneer's agent, and that under the law of agency, Pioneer is bound by Ables' knowledge of Chalupsky's claim. Collins' contention that Ables was an agent for Pioneer is based on § 56–705, Tenn.Code Ann.[10] Pioneer argues that § 56–705 is not applicable. Rather, it argues, TCA § 56–35–101 (formerly § 56–3401), *et seq.*, which regulates more narrowly the title insurance industry in Tennessee, is the applicable statutory provision. The record shows that Ables secured the policy for Collins, and that until the policy was issued, Collins only dealt with Pioneer through Ables. Nonetheless we do not find that Tennessee law supports the proposition that the statute makes an attorney, involved as Ables was, an agent for the insurer.

The statute on its face indicates that § 56–705 does not apply to Ables. Chapter 7, Title 56, in which § 56–705 is included, is entitled "agents and solicitors generally." Chapter 7 governs the licensing of insurance agents in Tennessee. On the other hand, TCA § 56–3401 reads

This chapter shall be known as the "Title Insurance Law." All title insurance companies, title insurance agents and the business of. title insurance in this state shall be regulated, licensed and controlled by and under the provisions of this chapter to the exclusion of all other laws and parts of laws of a general nature not specifically applicable thereto.

Subsequent language in that chapter of the statute provides that:

Every title insurance company qualified under this chapter shall have the power to appoint agents for the conduct of its business. Every insurance company licensed under this chapter shall obtain from the commissioner of insurance and

banking, a certificate of authority for every agent writing or soliciting insurance in this state, as provided in this chapter, and such certificate shall be renewable in January of each year, and the same may be revoked as provided in § 56–3411. This section shall not apply to any executive, traveling salaried employees, nor persons employed by such agents solely for the performance of clerical, stenographic or similar office duties. For each certificate issued by the commissioner there shall be paid to him a fee of two dollars ($2.00).

TCA § 56–35–110 (formerly § 56–3410). Nothing in this chapter shall be construed to affect in any manner the relationship of attorney and client; or transactions between a title insurance company licensed hereunder and a licensed attorney-at-law; or the fees paid for services performed by a licensed attorney-at-law.

TCA § 56–35–120 (formerly § 56–3420). Nothing in this chapter, or in any other law of this state, shall be construed as preventing or prohibiting any attorney-at-law, real estate company, firm, broker or salesman, lending institution, or the officers and employees of any thereof, from advocating, recommending or requiring title insurance in any transaction in which they are engaged, nor transmitting to a title insurance agent or title insurance company, qualified in this state, applications for title insurance, arising out of such transactions, together with the charges therefor, and in so doing no such party shall be held to be a title insurer, nor to be engaged in business as a title insurance agent.

TCA § 56–35–121 (formerly § 56–3421).

■ There are sound reasons which support the Tennessee legislature's specific provision distinguishing title insurance agents from attorneys who aid clients in

---

**10.** *"56-705. Solicitors are agents of the insurer—Licensed fire insurance brokers excepted.*—Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of. no effect whatever; but this section shall not apply to licensed fire insurance brokers."

securing title insurance. Section 56–705 contains a statutory resolution of an issue noted by authorities on insurance law: may an insurance salesperson who aids an applicant in securing a policy of insurance be considered a concurrent agent of the insurer and the insured, e. g., 3 *Couch on Insurance 2d* § 25:100. The statute's resolution makes the solicitor of insurance an agent of the insurer "so as to afford to the insured a responsible connection with the insuring company." *Fesmire v. MFA Mutual Insurance Company*, 293 F.Supp. 1214, 1217 (W.D.Tenn.1968). However, if TCA § 56–705 is applied here, Ables would be an agent for Pioneer and have interests in conflict with his attorney-client relationship with Collins. The Tennessee legislature avoided that situation by adopting the provisions in Chapter 34, Title 56, Tenn.Code Ann., which distinguish title insurance agents from attorneys involved in title insurance transactions on behalf of clients.

It would be difficult to find a case better than the present one illustrating the potential conflicts of interest an attorney involved in securing title insurance may face. Ables was initially retained by Collins to examine title and to draft the closing documents. He was asked by Collins to secure a policy of title insurance as part of the closing, and he secured a policy of title insurance as part of his attorney-client relationship with Collins. For whatever reason, Ables obliged his client Collins by obtaining a policy for him without an exception for the Chalupsky lawsuit by failing to mention Chalupsky's claim in the attorney's documents on title which he sent to Pioneer. Ables also obliged another client, the sellers, by obtaining a policy of title insurance acceptable to Collins so that he would release the money held in escrow to them. Meanwhile he was also an "approved attorney" for Pioneer.

 Even if we were to find Ables was an agent for Pioneer, Ables' knowledge of Chalupsky's claim would not be imputed to Pioneer for another reason.

The principal is not ordinarily charged with the knowledge of the agent in a matter where the agent's interests are adverse to those of the principal.

> *First National Bank of Rogersville v. Hawkins County*, 463 S.W.2d 946, at 949 (1970), 62 Tenn.App. 459.

*See also, Freeman v. Citizens National Bank*, 167 Tenn. 399, 70 S.W.2d 25 (Tenn. 1934); *Restatement (2d) of Agency* § 729. Here the pressures from two clients to secure a policy of title insurance and to secure one without exception for Chalupsky's claim, which Ables knew would not be issued if Pioneer was informed of the claim, clearly make his interests adverse to those of Pioneer.

Our decision that Collins' actions bar his recovery on claims against Pioneer and Ables makes our consideration of the other issues raised unnecessary. We reverse the judgment of the district court and order the case remanded with directions to enter judgment in favor of defendants.

### ORDER

Palmer W. Collins' petition for rehearing asserts that the court erred when it reversed his judgment against Ables on grounds that he had knowledge of Ables' misrepresentation to Pioneer. Collins contends that the issue of his knowledge of Ables' misrepresentation was determined by the jury in his favor, and that there is sufficient evidence on the record to support the jury's finding.

The court's opinion necessarily included a determination that the district court erred in failing to grant a directed judgment notwithstanding the verdict on Collins' claim against Ables. That determination was based on a full consideration of the entire record.

IT IS ORDERED that Collins' petition for rehearing is denied.