PEACHTREE MANAGEMENT AND IN-
VESTMENT COMPANY, INC., and
Harry E. Ward, Jr., Plaintiffs,

v.

PIONEER NATIONAL TITLE INSUR-
ANCE COMPANY, Defendant.

Civ. A. No. C80–672A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 19, 1981.

Max Olim, Gershon, Ruden, Pindar & Olim, Atlanta, Ga., for plaintiffs.

William H. Major and William B. Brown, Heyman & Sizemore, Atlanta, Ga., for defendant.

Jeffrey M. Smith and Richard L. Shackleford, Trotter, Bondurant, Miller & Hishon, Atlanta, Ga., for Fred F. Filsoof.

## ORDER

SHOOB, District Judge.

Presently pending in this suit on a title insurance policy are (1) defendant's motion for summary judgment, filed June 15, 1981; (2) plaintiffs' motion for partial summary judgment, filed July 6, 1981; and (3) plaintiffs' motion to strike the affidavit of William F. Searle, filed October 2, 1981. The Court's disposition of the first motion makes it unnecessary to rule on the other motions. For the reasons set forth below, defendant's motion for summary judgment is GRANTED.

## FACTS

The following statement of undisputed facts is adopted from the statements of fact submitted by the parties with their cross-motions for summary judgment.

Tennessee Land and Development was incorporated under the laws of Tennessee on June 1, 1948. The corporation ("Tennessee Land") subsequently acquired title to many thousands of acres of land in northern Tennessee. However, Tennessee Land failed to pay required franchise and excise taxes for 1949, and its charter was revoked by Tennessee's Secretary of State on June 21, 1950. Tennessee Land was then inactive until 1975.

In late 1974, Atlanta businessmen Terry J. Aiken and Herbert C. Leeming were searching land titles in Tennessee and discovered a large tract of land owned by Tennessee Land. They also discovered that the corporation's charter had been revoked. A "search" for the three original shareholders of Tennessee Land by Messrs. Leeming and Aiken proved fruitless; apparently, no search was made for the *heirs* of the three original owners of the defunct corporation.

Leeming and Aiken then met with Mr. Owen Duckworth, Assistant Director of the Tennessee Department of Revenue, Franchise and Excise Tax Division, to inquire about reinstating the corporation. There is some divergence between the deposition testimony of Mr. Duckworth and that of Aiken and Leeming as to what was said. Aiken and Leeming contend that they told Mr. Duckworth that they were not stockholders of Tennessee Land; Mr. Duckworth testified that it was not his practice to ask whether persons seeking to reinstate corporate charters were officers, directors or stockholders of the corporation, and that he did not ask in this case. At any rate, Aiken and Leeming and a third person—Mr. Fred F. Filsoof, an Atlanta attorney—paid the back franchise and excise taxes for Tennessee Land, and the State of Tennessee on January 21, 1975 reinstated the charter in favor of new "shareholders" and "officers" Aiken, Leeming and Filsoof. By this means, these three gentlemen acquired over 27,000 acres of land for less than $5,000.00 (about 17 cents/acre).

As a condition to reinstating the charter of Tennessee Land, Leeming, Aiken and Filsoof represented that they were officers of that corporation by executing a document (Exhibit 1 to the Deposition of Owen Duckworth) which reads as follows.

> January 21, 1975
>
> I, Herbert C. Leeming, Terry J. Aiken and Fred E. [sic] Filsoof, as Officers of the Tennessee Land and Development Company, Incorporated, do hereby state and affirm that if the charter of Tennessee Land and Development Company, Incorporated, is reinstated, no third party will be injured by such reinstatement.

Mr. Filsoof never checked the legality of this transaction; nor did he, Mr. Leeming or Mr. Aiken have any Tennessee attorney determine whether this transaction was legitimate under Tennessee law.

Also on January 21, 1975, Aiken, Leeming and Filsoof merged Tennessee Land and Development Company with their Georgia

corporation, Peachtree-Cypress Investment Company, Inc. On the following day, they conveyed the 27,000 acres from Peachtree-Cypress to another Georgia corporation, Peachtree Management and Investment Company, Inc., of which Aiken, Leeming and Filsoof were the sole owners, officers and directors. These men immediately began to search for a buyer for this corporation and its sole asset, 27,000 acres of land.

On April 3, 1975, plaintiff Harry E. Ward, Jr., bought all the capital stock of plaintiff Peachtree Management and Investment Company, Inc. for a purchase price of $273,065.00. Ward had no knowledge of the method by which Aiken, Leeming and Filsoof acquired the land.

As a condition of the agreement, sellers Aiken, Leeming and Filsoof were to secure a title insurance property on the land acceptable to purchaser Ward and to Ward's attorney, Mr. James McGarry. The title insurance policy was to be subject only to standard exceptions and to exceptions listed in a title opinion prepared by Mr. Harold Childers. Mr. Childers is a·Tennessee attorney, experienced in title work, who was retained by Aiken, Leeming and Filsoof to, *inter alia*, procure this title insurance policy. Mr. Childers caused defendant to issue the instant title insurance policy on the same day he applied for it. He, like Mr. Filsoof, failed to make any independent inquiry into the legality of the reinstatement of Tennessee Land's corporate charter by Leeming, Filsoof and Aiken. Mr. Childers states that he told Mr. Searle, an agent for defendant, of the charter reinstatement; however, he failed to tell Mr. Searle or any agent of defendant that Tennessee Land's charter had been reinstated by strangers to the corporation.

This transaction began to unravel in 1977, when the State of Tennessee brought a *quo warranto* action to nullify the reinstatement of the revoked corporate charter of Tennessee Land. Of the signed, unsworn statement of January 21, 1975, see page 52 of this order, *supra*, and regarding this transaction, the Supreme Court of Tennessee cogently held:

Under the circumstances related herein that statement [that Leeming, Aiken and Filsoof were corporate officers and that no third parties would be harmed by reinstatement] was false and facially had no probative value. The action of the Commissioner of Revenue in accepting it and certifying the reinstatement of The Tennessee Land and Development Company, Inc. and the merger into Peachtree-Cypress Investment Company, Incorporated, a Georgia corporation, in exchange for corporate taxes and reports from three strangers to the corporation was the equivalent of a tax sale of the corporation's property without due process of law. We declare the reinstatement of the corporation charter of The Tennessee Land and Development Company, Incorporated, and the attempted merger of that corporation with Peachtree-Cypress Investment Company, Incorporated, a Georgia corporation, to be null and void and of no force and effect whatsoever.

*State of Tennessee ex rel. Shriver v. Tennessee Land and Development Company, Inc., et al.*, 585 S.W.2d 608, 610 (1979). Mr. Ward having bought plaintiff corporation for its 27,000 acre asset, this suit followed.

### LAW

■ The title insurance policy sued upon (*see* Exhibit P–1 to the deposition of William F. Searle) contains no clause indicating which state law controls. However, since the land is in Tennessee and the parties assume that Tennessee law controls, this Court will apply Tennessee law.

Defendant contends that plaintiffs may not recover on the policy due to the following standard exclusion.

The following matters are expressly excluded from the coverage of this policy:

.     .     .     .     .

3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the [defendant] and not shown by the public records but known to the insured claimant either at Date of Policy or at the date

such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the [defendant] prior to the date such insured claimant became an insured hereunder; . . . .

The named insured is plaintiff Peachtree Management and Investment Company, Inc. Plaintiff Ward may also be an insured as the successor to the interest of plaintiff corporation (as its sole shareholder). However, Ward is only insured "subject to any rights or defenses [defendant] may have had against the named insured, . . ." and thus, this discussion of Pioneer National Title Insurance Company's defenses applies with equal force to both plaintiffs.

■ 1. Standard Exclusion 3(a). Insured claimant Peachtree Management and Investment Company knew, through its three shareholders/officers/directors, of the manner in which Tennessee Land's acreage was acquired and transferred to it. It is *possible* that Leeming and Aiken considered the transaction to be essentially 'legal,' and that no fraud was perpetrated on anyone.[1] But this Court need not determine that the acts of Leeming, Aiken and Filsoof were actually fraudulent to conclude that the method by which Peachtree Management acquired the land was a "defect" in title to the land which was "suffered" by Peachtree Management, "assumed" by Peachtree Management, and "agreed to" by Peachtree Management. The undisputed facts reveal a defect squarely within the meaning of standard exclusion 3(a).

■ 2. Standard Exclusion 3(b). Likewise, the ineffective reinstating of Tennessee Land's corporate charter by 'interlopers'[2] Leeming, Aiken and Filsoof was a "defect" in the chain of title "not known to [defendant Pioneer National Title Insurance] Company and not shown by the public records but known to the insured claimant [Peachtree Management and Investment Company] at Date of Policy . . . and not disclosed in writing by the insured claimant to the [defendant] prior to the date such insured claimant became an insured hereunder; . . ." Even if, as plaintiffs contend, there was no "defect" until the Tennessee Supreme Court ruled the entire transaction null and void in 1979, the Court holds that this transaction was more than sufficiently dubious to be an "other matter" within the meaning of the policy, which Peachtree Management had a duty to disclose to defendant Pioneer.

■ 3. Duty to Disclose Facts Material to Risks Involved. Aside from the fact that the problem which arose regarding plaintiffs' title to the land falls within policy exclusions 3(a) and 3(b), it is clear that insured claimant Peachtree Management breached its duty under Tennessee law " 'to make a fair disclosure of the facts [of the risks involved] to the insurer.' *Bauer v. Mutual of Omaha*, 62 Tenn.App. 189, 460 S.W.2d 366, at 370 (1969); *Knights of Pythias v. Rosenfeld*, 92 Tenn. 508, 22 S.W. 204 (1893)." *Collins v. Pioneer Title Insurance Company*, 629 F.2d 429, 433 (6th Cir. 1980). The *Collins* court elaborated on the duty to disclose:

> The insured's duty "to make a fair disclosure of the facts" means that he or she must disclose information which is mate-

---

1. This Court, however, finds it difficult to believe that an attorney could have been unaware of the deception involved in this transaction. The Tennessee Supreme Court noted:

> The Court can take judicial notice of the fact that Tennessee Land and Development Company could not have obtained deeds to thousands of acres of land without paid in capital or its equivalent, the source of which was necessarily the subscribers for the stock of the corporation or creditors of the corporation.
>
> It is undisputed in this record that title to vast acreage in East Tennessee remained in the corporation's name on January 21, 1975, and it is elementary that the equitable owners of such assets as the corporation owned were its stockholders, if it was lawfully organized, but if not, then its creditors. Defendants also say that all of the stockholders were dead and that corporations do not have heirs, but of course, stockholders are persons and do have heirs.

*State of Tennessee ex rel. Shriver, supra*, 585 S.W.2d at 609–10.

2. *See State of Tennessee ex rel. Shriver, supra*, 585 S.W.2d at 610.

rial to the risk involved. *Sloop v. Mutual of Omaha*, 55 Tenn.App. 656, 404 S.W.2d 265, 268 (1965). Whether information not disclosed is material is a question of law for the court. *Mutual Life Insurance v. Dibrell*, 137 Tenn. 528, 194 S.W. 581, at 583 (1916); *Harris v. State Farm Mutual Insurance*, 232 F.2d 532, 535 (6th Cir. 1956). The standard for materiality was established by the Tennessee legislature.

No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, *or unless the matter represented increases the risk of loss.*

TCA § 56 7 103 (formerly § 56 1103). *Collins, supra*, 629 F.2d at 434 (emphasis added; footnote omitted). It is not mere hindsight based on the Tennessee Supreme Court's ruling that leads this Court to conclude, as a matter of law, that the transaction voided by the Tennessee Supreme Court "increased the risk of loss" to defendant title insurer. It has been a long time since the principle "finders, keepers" had any applicability to land. And the notion that valuable real property could be legitimately acquired in this fashion by paying some (but not all) back taxes, in a total amount of about 2% of the land's worth, is fanciful at best. Certainly, Mr. Filsoof, an attorney, must have known that the land's *real* owners had to be paid for their valuable asset. The failure of Peachtree Management to disclose the method by which its principals had acquired the property voids the policy of title insurance. *Collins, supra*, 629 F.2d at 433.[3]

## CONCLUSION

Both plaintiffs and defendant in this action are essentially innocent victims of the

transaction outlined in *State of Tennessee ex rel. Shriver, supra*. However, both the title insurance policy issued by defendant, and Tennessee substantive law regarding material disclosures in insurance applications, forbid this Court from requiring defendant to share plaintiffs' loss. Defendant's motion for summary judgment is GRANTED, and the Clerk of the Court is DIRECTED to enter judgment forthwith. Each side shall bear its own costs.

---

**3.** The preceding discussion of law pertains to Counts I and III of plaintiffs' complaint. Count II purports to be a claim that defendant was negligent in issuing the title policy. Plaintiffs advance no authority for a cause of action for "negligence in issuing an insurance policy." Even if such a cause of action existed, the facts in this case do not support such a claim.